## Commonwealth to use *v.* Gregory et al., Appellants.

*Public officers—Register of wills — Liability on official bond — Failure to require bond from foreign executor—Default—Act of March 15, 1832, P. L. 135, Section 27—Devastavit—Decree of Orphans' Court—Conclusiveness—Presumption of duty performed—Rebutted by pleadings—Action on register's bond—Register's liability.*

1. After letters testamentary are granted, even though improperly, the person named therein is a de facto executor, answerable for his deeds to the Orphans' Court, until duly discharged by the revocation of his prima facie right to act.

2. The meaning of the provision of the Act of March 15, 1832, P. L. 135, Section 27, that letters granted to a nonresident executor without the register taking a bond shall be void, is that the letters thus improperly granted are void only when judicially so declared by a proper tribunal, and they must be so adjudged upon showing the nonentry of a bond.

3. While the Act of 1832 provides that a person to whom letters are improperly granted shall be deemed and "may be sued and in all respects treated as an executor of his own wrong," it does not require that he must be so sued and treated, the manifest intent being that such a person shall be liable not only to citation from the Orphans' Court but also to suit at law as an executor de son tort.

4. Payments made to one to whom letters testamentary have been granted, while such letters are in force, even though subsequently revoked, are lawful acts, in consequence of which the person named therein as executor may be cited by the Orphans' Court to settle an account.

5. Where a nonresident executor is guilty of culpable acts of omission resulting in loss to the estate, he and the domiciliary executor are jointly responsible for the resulting loss.

6. Where a register of wills granted ancillary letters testamen-

tary to a nonresident executor without obtaining a bond as required by the Act of March 15, 1832, P. L. 135, Section 27, and such executor defaulted and his coexecutor, a resident of this State, died insolvent, the register is liable on his official bond for the amount of such default, and where a decree was entered by the Orphans' Court against both executors before the death of the latter for the amount of the devastavit, such decree is conclusive as against the register, and as to his sureties to the extent of their obligation, in an action on his official bond in the Common Pleas, and it is immaterial that the register and his sureties were not parties to the proceeding in the Orphans' Court.

7. In such case the contention that to permit the resident executor, originally named as use-plaintiff, to recover in this action would, in effect, recognize in him a right of action against the nonresident executor, who was a joint tort-feasor with him, is without merit, since the resident executor appeared as use-plaintiff in a representative capacity, whereas he and the nonresident executor were answerable in their individual capacities for the devastavit.

8. In such case where the decree of the Orphans' Court which orders payment names the executor as "executors," such designation is a matter of surplusage and may be disregarded.

9. In such case where the resident executor died after the bringing of suit on the bond and the present use-plaintiff was appointed to continue the suit, plaintiff may collect and remit the money to the domiciliary executor in the state in which decedent died, for distribution.

10. The rule that where the same person is acting as domiciliary and ancillary executor, there is a presumption that he has done his duty and made payment to the estate, has no application where it is admitted in the pleadings that the money had never actually been paid. Any presumption of payment is rebutted by the admitted fact of nonpayment.

11. Where through the mal-administration of an ancillary trust losses occur in Pennsylvania and the proper tribunals here adjudge the questions involved, determine the amount due, and order the devastavit made good, when the order has, in fact, not been complied with, the dignity of our tribunals and the proper administration of the law demand that the losses occuring in this State shall, when possible, be made good here, and when the fund is realized, after Pennsylvania creditors are paid, the balance may then be remitted to the domicile of the decedent.

Argued March 5, 1918.    Appeals, Nos. 30 and 31, Jan. T., 1918, by George R. Gregory, and the Berks County

108 COMMONWEALTH to use *v.* GREGORY et al., Appel.

Trust Co., defendants, from judgment of C. P. Berks Co., Jan. T., 1916, No. 57, on verdict for plaintiff, Colonial Trust Co., in case of Commonwealth of Pennsylvania, for the Use of Colonial Trust Company, of Reading, Pa., Ancillary Administrator d. b. n. c. t. a. of Joseph Middleby, deceased, The Marshall Auto Company, Nelson B. Bates, and Knapp-Greenwood Company, Inc., v. George R. Gregory, and The Berks County Trust Company. Before POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Assumpsit on register of wills' official bond. Before WAGNER, J.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff, Colonial Trust Co., for $30,000 and judgment thereon. Defendants appealed.

*Error assigned,* among others, was in refusing defendant's motion for judgment n. o. v.

*Joseph R. Dickinson,* with him *Fred A. Marx,* for appellants.—The adjudication and proceedings of the Orphans' Court are not admissible as evidence in an action to recover damages under the Act of March 15, 1832, Sec. 27, P. L. 135: Beltzhoover v. Gollings, 101 Pa. 293; Roumfort v. McAlarney, 82 Pa. 193; Nass v. Vanswearingen, 7 S. & R. 192; Stockton v. Wilson, 3 P. & W. 129; Smith v. Wildman, 178 Pa. 245; Lightner's Est., 187 Pa. 237.

Neither contribution nor indemnity will be given to one of several tort-feasors against the others: Boyer v. Bolender, 129 Pa. 324.

The money sued for, treating it as damages, does not belong to the ancillary administrator, and therefore there is no proof of damages accruing to the plaintiff as required by the Act of 1832: Miller's Est., 3 Rawle 311; Mothland v. Wireman, 3 P. & W. 185; McKeen v. Northampton, 49 Pa. 519; Stokely's Est., 19 Pa. 476; Barry's

App., 88 Pa. 131; Viosca's Est., 197 Pa. 280; Laughlin
& McManus v. Solomon, 180 Pa. 177; Hare v. O'Brien,
233 Pa. 330; Clark v. Steele, 255 Pa. 330.

If any damage has accrued, it results from the mal-
administration of the domiciliary executors, for which
they are accountable in Massachusetts: Stokely's Est.,
19 Pa. 476; Commonwealth v. Messinger, 237 Pa. 1;
Skeer's Est. (1), 249 Pa. 288; Jennison v. Hapgood, 10
Pickering (Mass.) 77.

*W. K. Stevens,* with him *W. B. Bechtel,* for appellee.—
Assets of the estate having come into the hands of both
executors both are jointly and severally liable: Irwin's
App., 35 Pa. 294.

A judgment or decree against an executor or adminis-
trator is, in the absence of fraud or collusion, conclusive
against the sureties on the bond, although they were not
parties to the proceeding and cannot be collaterally ques-
tioned by them in an action on the bond.

Failure of an executor or administrator to turn over
the assets of the estate to his successor in office upon a
revocation of his letters or resignation or removal, is a
breach of the bond: Commonwealth v. Ruhl, 199 Pa. 40;
Yung's Est., 199 Pa. 35; Garber v. Commonwealth, 7
Pa. 265.

The damages suffered are an asset of the estate in
Pennsylvania, and must be sued for and administered by
the ancillary administrator: Hare v. O'Brien, 233 Pa.
330; Bradford v. Bradford, 2 Clark 511.

There is no presumption of payment: Stokely's Est.,
19 Pa. 476, and Skeer's Est., 249 Pa. 288.

OPINION BY MR. JUSTICE MOSCHZISKER, April 3, 1918:
This suit is against a register of wills and the surety
on his bond; the plaintiff recovered a verdict, upon
which judgment was entered, and defendants have ap-
pealed.

The following facts were established: At the time in

question, George R. Gregory was the duly elected register of wills of Berks County, and the Berks County Trust Company was the surety on his official bond; Joseph Middleby, domiciled in Massachusetts, but doing business at Reading, Pennsylvania, died testate May 20, 1911; he appointed as executors Jere J. McCarthy and Milton A. Gherst, the first a non-resident and the other a resident of this State; the will of Mr. Middleby was duly probated in Massachusetts and letters testamentary issued to McCarthy and Gherst; June 10, 1911, ancillary letters were granted to the same persons by Gregory, without exacting a bond from McCarthy, the nonresident executor, as required by Section 27 of our Act of March 15, 1832, P. L. 135, 142 (session of 1831-2); in due course, the Orphans' Court of Berks County found a devastavit in the decedent's estate, and, Mr. McCarthy having been dismissed as ancillary executor on January 11, 1913, a decree was entered October 30, 1915, directing M. A. Gherst and Jere J. McCarthy to pay over to "M. A. Gherst, accountant," the remaining ancillary executor, $49,678.66; nothing in fact having been done to fulfil the requirements of this decree, and no other substantial recovery being possible in this jurisdiction, December 31, 1915, the present suit, on the official bond of the register, was instituted in the name of the Commonwealth "for the use of M. A. Gherst, one of the executors of Joseph Middleby, deceased," and certain designated creditors. Subsequently Mr. Gherst died, insolvent; April 25, 1916, the Colonial Trust Company of Reading was duly appointed ancillary administrator d. b. n. c. t. a. of Joseph Middleby, deceased, and substituted as a use-plaintiff upon the present record. The last mentioned plaintiff elected to try its case separately from those of the other use-plaintiffs, and the trial proceeded accordingly.

Most of the material facts involved were established by averments in the statement of claim, admitted or not sufficiently denied in the affidavit of defense, and the

others were duly proved; but the defendants raise a number of interesting issues of law, all of which were decided against them by the court below. We shall briefly discuss and determine these issues in the order which seems most suitable to the case as a whole.

Section 27 of the Act of 1832, supra, provides, "If any register shall grant letters testamentary to any person, not being an inhabitant of this Commonwealth,...... without having......taken a bond and sureties in the manner hereinbefore prescribed, such letters shall be void, and every person acting under them shall be deemed, and may be sued, and in all respects treated, as an executor of his own wrong, and the register granting the same, and his sureties, shall be liable to pay all damages which shall accrue to any person by reason thereof." The form of bond is prescribed in section 24 of the act, which provides, inter alia, that the principal in the obligation must agree to file an account of his administration in the Orphans' Court of the proper county and pay the awards made by that tribunal.

Appellants contend that, under the above quoted section of the Act of 1832, supra, Jere J. McCarthy, not having entered a bond, was simply an executor de son tort; and hence the Orphans' Court had no jurisdiction to find a devastavit against him or order payment thereof. We cannot sustain these contentions. In the first place, it is to be observed, the act does not state that letters granted to a nonresident without the entry of a bond shall, for all purposes, be ipso facto void; while the word "void" is used, evidently the legislative intention was to provide that letters thus improperly granted shall be void when judicially so declared by a proper tribunal, and that they must be thus adjudged upon showing the nonentry of a bond.

Huff's Est., 15 S. & R. 39, 41-2, contains some relevant general principles, by Tilghman, C. J., which it will be helpful to repeat here. It is there said: "An executor to whom probate has been granted, differs from an executor

de son tort; the former has acted under letters testamentary from an officer who had jurisdiction in the case, the latter has never acted but under a usurped authority. ......The granting of probate by the register of wills is a judicial act, and, while it remains in force, it cannot be contradicted......, the probate, until annulled, being conclusive evidence......; a debtor......is, therefore, justified in making payment to the person who appears to be executor." We there decided that payments made by one to whom letters testamentary had been granted, while such letters were in force, even though subsequently revoked, were lawful acts, in consequence of which the person named therein as executor might be cited by the Orphans' Court to settle an account.

When wé read as a whole the statutory provision now before us and apply thereto the legal principles just quoted from Tilghman, two things are clear: (1) After letters testamentary are granted, even though improperly, the person named therein is a de facto executor, answerable for his deeds to the Orphans' Court, until duly discharged by the revocation of his prima facie right to act; (2) While the statute here in question provides that a person to whom letters are improperly granted shall be deemed and "may be sued and in all respects treated as an executor of his own wrong," yet it does not require that he must be so sued and treated, the manifest intent being that such a person shall be liable not only to citation from the Orphans' Court, but also to suit at law as an executor de son tort; in other words, that he shall be liable to the strict accountability to which one occupying that position is subject. Furthermore, in the case at bar, as stated by the court below, not only did McCarthy act on the letters granted to him, which would tend to make him liable to account to the Orphans' Court (Delbert's App., No. 2, 83 Pa. 468, 474), but he appealed to this court from the decree of that tribunal discharging him from his office as ancillary executor (McCarthy's App., 242 Pa. 39, 42), and we then

said that, "for the purpose of the estate," McCarthy was "within the jurisdiction of the [Orphans'] Court."

Appellants claim, however, that, even though it be conceded the Orphans' Court had jurisdiction to settle the devastavit and order payment of the amount involved, the present defendants not being parties to the record in that proceeding, there can be no recovery against them here, because the damages alleged to have been sustained by such devastavit were not again proved in this case; in brief, that the finding of the Orphans' Court as to the amount of the devastavit is not binding against these defendants. We see no merit in this contention. McCarthy was guilty of the misconduct of decedent's business which caused the surcharge by the Orphans' Court, yet, because of culpable acts of omission on the part of Gherst, his colleague, both of them were properly held to be jointly responsible for the resulting losses (Irwin's App., 35 Pa. 294, 296); had the register obtained a bond with proper sureties, the latter, upon McCarthy's default, would have been obliged to pay these losses, and, in an action on this bond, the decree following the audit would be conclusive against such sureties, even though they were not parties to the proceedings in the Orphans' Court: Garber v. Com., 7 Pa. 265, 266; Hartzell v. Com., 42 Pa. 453, 461; Yung's Est., 199 Pa. 35, 40; Com. v. Ruhl, 199 Pa. 40, 44. We think no error was committed in treating the decree of that tribunal as equally conclusive against the present appellant and his sureties; for, otherwise, the Common Pleas would be obliged, in effect, to go into, review and determine the question of the proper settlement of the decedent's estate, after all the issues involved had been determined by the Orphans' Court, as shown by the record thereof, which was properly admitted in evidence at the trial below.

To continue our consideration of this branch of the case, the register failed in his obligation to secure a bond from McCarthy; but the former, himself, was under bond for the proper discharge of his official duties. On the

facts at bar, what is the liability of the sureties upon this latter bond? Section 27 of the Act of 1832, supra, provides that any register of wills who grants letters testamentary to a nonresident without taking a bond, with sureties (stipulating that the person to whom the letters are issued shall, inter alia, duly pay the awards of the Orphans' Court upon the settlement of the estate committed to his care), "shall be liable to pay all damages which shall accrue to any person by reason" of the failure to exact such a bond. Here, no matter whose name appears as representing the estate of Joseph Middleby, deceased, that estate is, and at all times was, the real use-plaintiff, and, had the register performed his duty and obtained a bond from McCarthy, the latter's default would presumably have been made whole by the sureties on this bond; but, "by reason of" no bond having been given, damages have "accrued" to the Middleby estate in the amount it would have recovered from such sureties had the obligation in question been entered as required by law. The Orphans' Court was the tribunal vested with authority to determine the fact and amount of the devastavit, its adjudication in that regard is binding upon the register, and it follows, under the circumstances of this case, that he is liable for all damages resulting from such devastavit; finally, the sum sued for being within the losses determined by the Orphans' Court, and the register's sureties having undertaken that he should "faithfully execute the duties of his office," they must, to the extent of their obligation, answer to the amount of the verdict rendered—in other words, when the defendant, Gregory, failed in his duty to obtain a bond with sureties from McCarthy, he, as register, thereby became liable, under the statute, to answer for any damage that might follow as a natural and logical result of his default in this respect, which, under the facts at bar, so far as the binding effect of the adjudication of the Orphans' Court is concerned, places him, and hence his sure-

ties, in practically the same position as sureties on Mc-Carthy's bond, had such an obligation been entered.

Again, appellants assert that to permit Gherst, originally named as a use-plaintiff, to recover in this action would, in effect, recognize in him a right of action against McCarthy, who was a joint tort-feasor with the former; and, they say, this cannot be done. The contention has no merit, for it disregards the fact that Gherst appeared, as use-plaintiff, in a representative capacity, i. e., for the estate of Middleby, deceased; whereas he and McCarthy were answerable in their individual capacities for the devastavit. The fact that the decree of the Orphans' Court which orders payment calls them "executors," has no controlling significance; the addition of this title is surplusage and may be disregarded: Hare v. O'Brien, 233 Pa. 330, 337.

Possibly it would have been better practice to dismiss Gherst, as well as McCarthy, from his office as ancillary executor, then appoint a successor, make an award of the amount of the surcharge against Gherst and McCarthy to such successor, and employ the name of the latter as a use-plaintiff in the present suit; but, since Gherst died after the beginning of this action, and the present use-plaintiff was appointed, before judgment, to continue the suit, this successor is in a position to collect and remit the money to the domiciliary executor in Massachusetts for distribution, as directed by the decree of the Orphans' Court, and no harm is done by the course of practice actually followed.

Finally, appellants contend that, when the devastavit was found against Gherst and McCarthy, decedent's domiciliary executors in Massachusetts became entitled to the amount of the surcharge, and, as the domiciliary and ancillary executors happen to be the same persons, a presumption arises that the money in question has been paid to the former, which presumption must prevail at least till these executors have failed to account for the fund in the proper tribunal of the domicile. To sustain

this contention, they cite: Stokely's Est., 19 Pa. 476, 482; Com. v. Messinger, 237 Pa. 1; and Skeer's Est. (No. 1), 249 Pa. 288. In the first of these cases, we said that, where the same person is acting as domiciliary and ancillary executor, there is a presumption that he has done his duty, and "when he comes to settle his account in the state where [final] distribution is to be made, he cannot deny that he has received what the foreign administrator, if he had been a different person, would have been compelled to pay, and what he would have been bound in duty to demand and get"; but there the evidence showed that the person involved admitted actual receipt of the fund in question, offering no good reason for his refusal to account therefor. In the other two cases the evidence shows what in fact amounts to payment of the fund in controversy to the fiduciary ultimately liable to account therefor; whereas, at bar, as stated by the court below, "the money Gherst and McCarthy received and the estate they mismanaged was in their capacity as ancillary executors,......and...... it is admitted by the pleadings......that this money has never actually been paid to......[the Middleby estate] by the two ancillary executors," nor, we may add, has it been paid by any one else. In other words, as the court below says, any "presumption of payment is rebutted by the admitted fact of nonpayment."

Moreover, where, through the maladministration of an ancillary trust, losses occur in Pennsylvania, and the proper tribunals here adjudge the questions involved, determine the amount due, and order the devastavit made good, it will not do to say when the order has, in fact, not been complied with, that, through a fiction, our courts have so far lost control of the matter that they cannot enforce their own decrees. On the contrary, the dignity of our tribunals and the proper administration of the law demand that in every such instance the losses occurring in this State shall, when possible, be made good here; and, when the fund is realized, after Pennsylvania credi-

COMMONWEALTH to use *v.* GREGORY et al., Appel. 117

tors are paid, the balance may then be remitted to the domicile of the decedent. Perhaps in this particular case the surviving domiciliary executor and his sureties can be held liable in Massachusetts for so much of the present devastavit as may not be recovered in Pennsylvania; but this is not a matter for our determination.

The assignments of error are overruled, and the judgment is affirmed.