## DeJoia v. City of Meadville

*Donald R. McKay,* for plaintiffs.

*E. Max Weiss* and *Nancy M. Sennett,* for defendants City of Meadville and Parking Authority of the City of Meadville.

*Joseph S. Weimer,* for defendants Crawford County and Fireman's Fund Insurance Companies.

WALKER, *J.*, September 21, 1989 — This declaratory-judgment action raises a novel issue of law on essentially undisupted facts.

On February 29, 1984, Ruth Ann DeJoia, wife plaintiff, fell at a parking lot in the City of Meadville, operated by the Parking Authority of the City of Meadville (hereinafter collectively referred to as the municipal defendants). At the time of the fall, wife plaintiff was an employee of Crawford County, which carried workers' compensation insurance through defendant, Fireman's Fund Insurance Companies. Apparently it was determined that plaintiff's injuries occurred during the course of her employment, and Fireman's Fund as the workers' compensation carrier has paid out substantial funds as workers' compensation and for medical expenses. Plaintiffs have filed suit against the municipal defendants to recover damages arising out of the incident alleging tortious conduct on the part of the municipal defendants.

Fireman's Fund notified plaintiffs of its intention to subrogate against any recovery made by plaintiffs for the workers' compensation benefits paid to wife plaintiff either past or future. Plaintiffs then filed this declaratory-judgment action to determine the right of Fireman's Fund to subrogation against any recovery in the tort action alleging, and we believe rightly so, that a ruling on the issue would facilitate ultimate settlement of the underlying tort case.

Although plaintiffs commenced this declaratory-judgment proceeding with a view toward facilitating settlement, other than that possibility, plaintiffs have no substantial interest in the outcome. This is essentially a dispute between two insurance carriers as to who will bear the burden of the injuries. The municipal defendants have moved for summary judgment to resolve the issue since there are no

disputed facts, and the legal issue revolves around the interpretation of section 319 of the Pennsylvania Workmen's Compensation Act, 77 P.S. §671, which grants to an employer a subrogation claim to the rights of an employee against third persons, and its interface with the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8541 et seq., and particularly, the section relating to limitations on damages, 42 Pa.C.S. §8553.

It can thus be seen that the real issue joined is between two insurance carriers as to who will bear the brunt of the expense if plaintiffs are successful in their tort action. If there is a right of subrogation and the plaintiffs ultimately succeed in the tort action, then the entire burden is shifted to the liability insurance carrier for the municipal defendants. If there is no right of subrogation and plaintiffs ultimately succeed in winning a verdict in the tort action excluding damages duplicating the amounts paid under the Workmen's Compensation Act, the two insurance carriers will to some degree jointly bear the financial burden albeit not necessarily equally since that will depend upon the size of the tort verdict.

42 Pa.C.S. §8553(d) provides as follows:

"If a claimant receives or is entitled to receive benefits under a policy of insurance other than a life insurance policy as a result of losses for which damages are recoverable under subsection (c) the amount of such benefits shall be deducted from the amount of damages which would otherwise be recoverable by such claimant."

A brief review of the history of governmental immunity sometimes intertwined with sovereign immunity in the decisions of our appellate courts may be helpful in our analysis of the Political Subdivision Tort Claims Act. The genesis of the

doctrine of governmental immunity has generally been traced to the English case of *Russell v. Men of Devon,* 100 Eng. Rep. 359 (K.B. 1788). Gradually, *Russell* became engrafted in the common law of the several states of the United States. In Pennsylvania the doctrine had a somewhat uneven growth. Eventually, however, two tests emerged from the Pennsylvania case law, first an examination of whether the duty of the municipality was mandatory or discretionary, and second, whether that duty was a governmental or a proprietary function.[*]

In *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973), the Supreme Court of Pennsylvania abolished the judicially created doctrine of governmental immunity totally. No immediate response came from the legislature and so for about five years municipal corporations were as amenable to suit on tort claims as any defendant.

In 1978, two things occurred which were probably interconnected, at least politically. On July 14, 1978, the Pennsylvania Supreme Court filed its decision in *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978) in which it went a step beyond *Ayala* and abolished the doctrine of sovereign immunity theretofore available as a defense to the commonwealth. In that opinion, the court rejected the argument of the commonwealth that Article I, section 11 of the Pennsylvania Constitution embedded sovereign immunity in constitutional law. The court held that the constitution was neutral on the subject and neither required nor prohibited sovereign immu-

---

[*] For a more comprehensive discussion of the subject matter, see 84 Dickinson L. Rev. 717.

nity, but that under Article I, section 11, the legislature could create legislative sovereign immunity as it saw fit.

Although the legislature had been slow in reacting to the plight of municipalities until that time, with uncharactristic alacrity it enacted, on September 28, 1978, Act 1978-152 (1 Pa.C.S. §2310) reinstating sovereign immunity and creating certain exceptions in which actions against the commonwealth would be permitted. Later at the same session on November 26, 1978, it enacted and the governor approved Act no. 1978-330 (53 P.S. §5311.101 et seq.) reinstating governmental immunity with exceptions and limitations. In 1980 both of the 1978 acts were codified as a part of the Judicial Code and are now found at 42 Pa.C.S. §8521 et seq. with the portion relating to governmental immunity beginning at section 8541.

Article I, section 11 of the Constitution of Pennsylvania insofar as it relates to the subject matter provides that "suits may be brought against the commonwealth in such manner, in such courts and in such cases as the legislature may by law direct." Identical provisions have been contained in the constitutions of this commonwealth at least since 1790. In *Carroll v. County of York*, 496 Pa. 363, 437 A.2d 394 (1981), the Political Subdivision Tort Claims Act was found to be generally constitutional. The Supreme Court reasoned that Article I, section 11 which permitted the legislature to govern suits "brought against the commonwealth" included suits brought against political subdivisions.

In *Smith v. City of Philadelphia*, 512 Pa. 129, 516 A.2d 306 (1986), appeal dismissed 479 U.S. 1074, 94 L.Ed.2d 127, 107 S.Ct. 1265, the provisions of 42 Pa.C.S. §8553 with which we are here concerned, creating certain limitations on the damages that

could be recovered, were upheld against constitutional attack under Article III, section 18 of the Pennsylvania Constitution and the 14th Amendment of the U.S. Constitution. The tenor of all of these decisions is that suits against the commonwealth or its political subdivisions may be permitted or limited in such manner as the legislature sees fit.

Fireman's Fund has argued in the instant case that at issue is a determination of whether the Political Subdivision Tort Claims Act repealed the earlier Workmen's Compensation Act provision as to subrogation to the extent that it was inconsistent, or whether the two acts must be construed together. It then points to the Statutory Construction Act, 1 Pa.C.S. §1921, which requires courts to interpret statutes in such a manner as to ascertain and effectuate the intention of the General Assembly. It also points to section 1933 of the Statutory Construction Act which provides that where it is impossible to construe the two acts other than as inconsistent, precedent shall be given to special provisions over general provisions. They suggest that the special provision is contained in the Workmen's Compensation Act and the general provision in the Political Subdivision Tort Claims Act. We do not necessarily agree with that interpretation of general and special provisions, but based upon our reasoning, we deem it unnecessary to reach that decision.

In the opinion of this court, the provision of 42 Pa.C.S. §8553(d) is intended to prevent, in suits against municipalities, the application of the collateral-source rule which obviously permits an injured party in certain circumstances to duplicate recovery. Assuming that we are correct in our perception of the legislative intent, then perhaps the use of the word "insurance" in 8553(d) was inappropriate. While most applications of the collateral-

source rule relate to some type of insurance, it is not necessarily true that all are so related. For example, payments under the Workmen's Compensation Act should be treated the same vis-a-vis the Political Subdivision Tort Claims Act whether the employer carries commercial insurance, is insured through the state fund or qualifies under the act to be self-insured. In the instant case, the word "insurance" gives us no difficulty because this employer was insured. However, under other circumstances it might require a more strained construction of the act to treat workmen's compensation payments in the same manner.

The legislature clearly intended to place limitations on the damages that could be collected in a tort action against a municipality. One of those limitations was that the plaintiff could not recover again any money that had been recovered through other insurance. This means in effect that the plaintiff will never recover the same money that has been paid under the Workmen's Compensation Act. If whatever is recovered is not the same money as was recovered under workmen's compensation, then the alleged right of subrogation fails.

In *Dale Manufacturing Co. v. Bressi*, 491 Pa. 493, 421 A.2d 653 (1980), the Supreme Court quoting from the Commonwealth Court opinion in the same case said:

"The employer must show he is compelled to make payments by reason of the negligence of the third party *and* the fund to which he seeks subrogation was for the same compensable injury for which he is liable under the act." (emphasis supplied by Supreme Court)

Although it may ultimately be shown that the municipal defendants were negligent and caused the injury to plaintiffs, the amount of damages that

can be recovered in that tort action are statutorily limited to exclude the money that has been received under the Workmen's Compensation Act.

For example, if the plaintiff in a tort action against a municipal defendant had a hospitalization policy which, as most do, provided contractually for subrogation to the insurer in the event of a recovery from a third person, then if the plaintiff recovered in the tort action for his or her hospital bills, the hospitalization insurer would have a right of subrogation. If, however, the defendant was a municipal corporation, the plaintiff could not recover for hospital bills because that would be an item of damage covered by other insurance. Since the recovery did not include any hospital bills, the hospitalization insurer would not be entitled to subrogation.

The rationale behind the right of subrogation contained at 77 P.S. §671 is three-fold: to prevent double recovery for the same injury by the claimant; to insure that the employer is not compelled to make compensation payments made necessary by the negligence of the third party, and to prevent a third party from escaping liability for its negligence. *Dale Manufacturing Co. v. Bressi, supra.*

If plaintiffs in the underlying tort action recover, it will not be a double recovery for the same injury because the Political Subdivision Tort Claims Act excludes the amount paid under workmen's compensation as a part of the damage. This factor would require proper explanation in jury instructions on damages in the trial of the tort action, or molding of the verdict if that were appropriate. The employer is not compelled to make compensation payments made necessary by the negligence of the third party since even if the negligence of the municipal defendant is established, it is not liable for the money represented by the compensation payments by vir-

tue of the limitation on damages. Lastly, the third-party municipal defendant is not escaping liability for its negligence because the statute already limits the damages that can be recovered from the municipal defendant by excluding the payments under the Workmen's Compensation Act.

This discussion would not be complete without some reference to the recent case of *Bentler v. Workmen's Compensation Appeal Board*, 121 Pa. Commw. 332, 550 A.2d 854 (1988). In *Bentler* a workman was killed while cleaning windows for the Scranton School District. The workman's employer was an independent contractor apparently holding a contract for the window cleaning. The widow collected workmen's compensation benefits, but also began a third-party tort action against the Scranton School District which was ultimately settled out of court. The compensation insurer then made a claim for subrogation against the fund created by the settlement and the workmen's compensation referee granted the insurer full subrogation. On appeal the Workmen's Compensation Appeal Board modified this holding by permitting subrogation only as to that portion payable to the decedent's children. The Commonwealth Court affirmed the Workmen's Compensation Appeal Board. The opinion itself in footnote 3 indicates that it is not applicable to the facts of the instant case. Nonetheless, we find it difficult to follow the reasoning of *Bentler*.

If the Political Subdivision Tort Claims Act places a limitation on damages that precludes recovery of the same money paid under the Workmen's Compensation Act, we can only assume that counsel for the parties are aware of that fact, and in reaching the settlement excluded from negotiations the money paid under workmen's compensation. If, in fact, the widow and children never received that

money in the settlement, the subrogation should not apply whether the suit was against the widow to recover after she settled or was directly against the municipal tortfeasor, which seems to be a distinction that the *Bentler* decision makes. We are not convinced of the wisdom of the *Bentler* decision, but in any event since by its own terms it is not applicable to the factual situation presently before the court, we need not consider it as precedent.

This is not to say that *Bentler* may not have some chilling effect on the efforts of plaintiffs and their counsel to negotiate a settlement of the tort action. If the tort action is litigated, the problem may be handled either by jury instructions or molding a verdict. If the tort action is settled, we will have to leave it to the very considerable ingenuity and competence of plaintiffs' counsel to design a release that avoids the problem posed by *Bentler* or to otherwise resolve that problem. The question is not before this court in this declaratory-judgment proceeding and the answer may be left to another day.

## ORDER

And now, September 21, 1989, declaratory judgment is entered as follows:

(1) Plaintiffs in this action shall have no right to recover as damages in the tort action for those items of damages compensated by workmen's compensation insurance.

(2) Fireman's Fund Insurance Companies shall have no right of subrogation against any fund recovered by plaintiffs in the tort action against the municipal defendants.