**Elvira A. DORSEY, an Individual and as Administratrix of the Estate of Andre Leonti, Deceased, Appellant**

v.

**Donald D. REDMAN, the Fayette County Register of Wills, and Western Surety Company.**

Commonwealth Court of Pennsylvania.

Argued Nov. 9, 2010.
Decided May 4, 2011.

Charles B. Hadad, Pittsburgh, for appellant.

Marie M. Jones, Pittsburgh, for appellee Western Surety Company.

BEFORE: COHN JUBELIRER, Judge and BROBSON, Judge and FRIEDMAN, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Elvira A. Dorsey (Dorsey), Administratrix of the Estate of Andre Leonti, Deceased (Estate), appeals from the December 16, 2009, Order of the Court of Common Pleas of Fayette County (trial court), which granted the Motion for Summary Judgment (Motion) filed by Donald D. Redman, the Fayette County Register of Wills (Register), and Western Surety Company (Surety) (collectively, Defendants) and denied Dorsey's Cross–Motion for Summary Judgment (Cross–Motion). The trial court granted summary judgment in favor of the Defendants, concluding that Register is protected by immunity pursuant to the act commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541–8564, and the Surety is not liable when there is no liability of the principal, the Register. At issue in this appeal is the interplay of Section 3172 of the Probate, Estates and Fiduciaries Code (PEF Code), 20 Pa.C.S. § 3172, which statutorily imposes liability on a register of wills to pay for damages that have accrued to any person when the register does not secure a bond that is required by law, and the governmental and official immunity sections under the Tort Claims Act pursuant to which the Register argues he is entitled to immunity.

Andre Leonti (Decedent), a resident of Fayette County, died on January 30, 2006. (Death Certificate at 1, R.R. at 109.) Soon thereafter, Cheryl L. Keefer (Keefer), filed a Petition with the Register for the Grant of Letters of Administration (Petition for Letters). (Petition for Letters at 1, R.R. at 151.) The Petition for Letters listed heirs and personal assets of Decedent as "unknown" and stated there was no real estate. (Petition for Letters at 1, R.R. at

151.) Register refused to grant Letters to Keefer because she did not have Decedent's death certificate, was not next of kin, and, therefore, was not a person entitled to Letters, pursuant to Section 3155(b) of the PEF Code. 20 Pa.C.S. § 3155(b). (Trial Ct. Op. at 2, ¶ 2.)

Because Register refused to grant her Letters, Keefer, through an attorney, filed a Petition on February 1, 2006, to authorize Register to issue Letters of Administration to her without the necessity of producing a death certificate and further directing the hospital to release the remains of Decedent for funeral and burial (Petition). (Petition at 1–3, R.R. at 152–54.) Keefer attached to this Petition a copy of a purported power of attorney allegedly executed by the Decedent to her on January 10, 2006. (Power of Attorney at 1–3, R.R. at 155–57.) Keefer represented in the Petition that she had been a friend of the Decedent for more than thirty years, that he was unmarried at the time of his death, had no children or relatives, and his parents had predeceased him. (Petition at 1–2, R.R. at 152–53.) Keefer further stated that the Mon Valley Hospital would not release the body to her for burial because she was not a relative and it would only be released to her if she were appointed to handle Decedent's Estate. (Petition at 1, R.R. at 152.) Keefer alleged that she desired to obtain the release of Decedent's remains to a funeral home and to have funeral and burial services. (Petition at 2, R.R. at 153.) Keefer represented that Decedent's estate assets were needed to pay for funeral and burial costs and other financial obligations of the Estate. (Petition at 2, R.R. at 153.) No

one contested the Petition and, on the same day the Petition was filed, February 1, 2006, the orphan's court issued an order *authorizing and directing* Register to issue Letters "without the necessity of requiring a death certificate," and further ordering and directing the hospital to release the Decedent's remains to Keefer for funeral and burial services (Keefer Order). (Keefer Order, R.R. at 158, 444.) In compliance with the Keefer Order, Register issued Letters to Keefer, but did not secure a bond from her. (Trial Ct. Op. at 2, ¶ 6.) Several months later, on April 25, 2006, Keefer filed with Register an Inventory of the Estate, indicating a total personal property value of $242,677.88. (Inventory at 1, R.R. 587.)

In May of 2006, Dorsey, a resident of Texas, alleged to be Decedent's niece, (Dorsey Dep. at 5, 33–35, R.R. at 161, 164), was informed of the Estate and her right to Estate assets as the alleged sole surviving heir of the Decedent. (Dorsey Dep. at 13–16, 37–38, R.R. at 163, 165.) Dorsey petitioned for the grant of Letters D.B.N.[1] and for the removal of Keefer as Administratrix (Dorsey Petition). The orphan's court granted the Dorsey Petition, issued an order removing Keefer as Administratrix on February 28, 2007, and requiring Keefer to deliver to Dorsey the custody and possession of the Estate assets (Dorsey Order). (Dorsey Order, R.R. at 43, 148, 448.) The Dorsey Order also authorized and directed the Register to grant Letters to Dorsey upon presentation of an appropriate petition for the grant of Letters.

---

1. According to Black's Law Dictionary, "[w]hen the first administrator of an intestate estate dies or is removed, the second administrator is called an administrator *bonis non*" (D.B.N.). *Black's Law Dictionary* 461–62 (9th ed. 2009). *See also* Section 3159 of the PEF

Code, 20 Pa.C.S. § 3159 (providing in part that when a "vacancy occurs in the office of personal representative before administration is completed, the register, in a case of intestacy, shall grant letters of administration *de bonis non*").

Keefer did not deliver the Estate assets to Dorsey, and Dorsey was unable to locate the Estate assets pursuant to her role as Administratrix D.B.N. Therefore, in addition to the Dorsey Order issued on February 28, 2007, Dorsey obtained another order from the orphan's court requiring Keefer to deliver the custody and possession of the Estate records and assets to Dorsey. (Orphan's Ct. Order, July 10, 2007, R.R. at 449–50.) As a result of Dorsey's efforts to enforce said orders, on October 26, 2007, the orphan's court issued an order holding Keefer in contempt of its earlier orders and further directing that a verdict be entered in favor of Dorsey and against Keefer in the amount of $192,769.19. (Orphan's Ct. Order, October 26, 2007, R.R. at 451–52.) The October 26, 2007, Order further stated that *"By copy of this Court Order, [Dorsey] may reduce such verdict to judgment in any appropriate office, whether that is the Office of the Register of Wills, or the Prothonotary, or both."* (Orphan's Ct. Order, October 26, 2007, R.R. at 451 (emphasis in original).) Therefore, on November 13, 2007, Dorsey filed praecipes for entry of judgment with the Fayette County Prothonotary and Register to enter said judgment against Keefer. (Praecipes for Entry of Judgment, R.R. at 605–13.)

Dorsey next filed a Complaint against Register and Surety, alleging that they are liable for the damages that have accrued to her as a result of the Register not securing a bond that Dorsey maintains was required by the PEF Code when he issued Letters to Keefer. At the conclusion of the pleadings, Register and Surety filed their Motion, alleging immunity from Section 3172 pursuant to the Tort Claims Act.

(Motion at 5–7 ¶¶ 21–27,[2] R.R. at 97–99.) Dorsey filed her Cross–Motion, alleging she was entitled to recover upon her verdict against Keefer that was reduced to judgment, and that Register was liable for this judgment since he did not secure a bond from Keefer when he granted Letters to her. (Cross–Motion at 1–2 ¶ 2, R.R. at 417.)

After the parties presented oral arguments, the trial court granted the Defendants' Motion, holding that Register was entitled to immunity under Section 8541 of the Tort Claims Act because the failure of a register of wills to secure a bond is not one of the enumerated exceptions to immunity set forth in Section 8542 of the Tort Claims Act, 42 Pa.C.S. § 8542, and no other exceptions applied. (Trial Ct. Op. at 3–4.) The trial court further concluded that *Antonis v. Liberati*, 821 A.2d 666 (Pa.Cmwlth.2003), in which this Court held a recorder of deeds to be immune from liability, was dispositive with regard to Register's entitlement to governmental immunity under Section 8541. (Trial Ct. Op. at 4–5.) The trial court additionally concluded that the defense of official immunity under Section 8546 of the Tort Claims Act, 42 Pa.C.S. § 8546, was applicable because "the Register's actions of February 1, 2006 in granting the Letters of Administration to Keefer were reasonably undertaken pursuant to the Order of [the orphan's court] ... that same date." (Trial Ct. Op. at 5.) Finally, the trial court found the Surety was not liable because its liability is predicated on the liability of its principal, Register. (Trial Ct. Op. at 5.)

Dorsey now appeals to this Court,[3] contending that the trial court erred as a

---

2. The Motion is mis-numbered and contains, within paragraphs 21–27, paragraphs numbered 19–22.

3. The "standard of review of a trial court's order granting summary judgment is limited to deciding whether the trial court committed an error of law or abused its discretion."

matter of law when it granted summary judgment in favor of Register pursuant to Sections 8541 and 8546 of the Tort Claims Act. Dorsey maintains that Section 3172 of the PEF Code applies, and she is entitled to recover damages from Register and Surety because Register granted Letters to Keefer without securing a bond. Specifically, Dorsey contends that Register is not entitled to governmental immunity pursuant to Section 8541 because, she argues, that immunity applies only to tortious conduct and does not apply in the case of a failure to fulfill duties as a public official under bond, as in contract or assumpsit. Dorsey further contends that the trial court erred when it applied *Antonis* on this issue as controlling precedent, rather than *Commonwealth, to Use of Colonial Trust Co. of Reading v. Gregory*, 261 Pa. 106, 104 A. 562 (1918). She further maintains that Register is not entitled to the defense of official immunity pursuant to Section 8546.

### I. Section 3172 of the PEF Code

Section 3172 of the PEF Code provides:

> If any register shall grant letters without having taken such bond as is required by law, he and his surety shall be liable to pay all damages which shall accrue to any person by reason thereof. Nothing herein stated shall be deemed to relieve the personal representative from liability which would otherwise be imposed upon him by law.

20 Pa.C.S. § 3172. Section 3172 is a statutory provision which holds a register of wills accountable for Pennsylvania's bonding requirements for estate administrators and provides a remedy for an estate's beneficiaries in the event a bond was not secured when "required by law." 20 Pa. C.S. § 3172.

Section 3172 and its similar predecessor statutes have been in effect since at least 1832, throughout the development of the common law doctrine of governmental immunity and before the legislative enactment of Section 8541.[4] Indeed, in *Colonial Trust*, the Pennsylvania Supreme Court held a register of wills who failed to secure a bond from a non-resident liable for violation of the statutory predecessor to Section 3172. *Id.*, 261 Pa. at 113–14, 104 A. at 564.

### II. Governmental and Official Immunity

Subsequent to the 1918 Supreme Court decision in *Colonial Trust*, the legislature enacted governmental and official immunity provisions. After the abrogation of governmental immunity by the Supreme Court in *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 597–99, 305 A.2d 877, 883–84 (1973), *superseded by statute*, the General Assembly, reacting to that decision, enacted governmental and official immunity by statute. *See generally DeJoia v. City of Meadville*, 3 Pa. D. & C. 4th 444, 446–49 (1989). On September 28, 1978, the Legislature enacted Act 1978–152, codified at 1 Pa.C.S. § 2310, "reinstating sovereign immunity and creating certain exceptions in which actions against

---

*Barra v. Rose Tree Media School District*, 858 A.2d 206, 214 (Pa.Cmwlth.2004). "Summary judgment may be granted only in those cases in which the record clearly shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *In Re Estate of Ross*, 815 A.2d 30, 34 n. 9 (Pa.Cmwlth.2002) (emphasis omitted).

4. Section 3172 is a descendant of Section 8(d) of the former Fiduciaries Act of 1917, which traces its origins back to Section 27 of the former Act of March 15, 1832, P.L. 135. *Colonial Trust*, 261 Pa. at 111, 104 A. at 563.

the commonwealth would be permitted." *DeJoia*, 3 Pa. D. & C. 4th at 448. The *DeJoia* court explained that in

> the same session on November 26, 1978, it enacted and the governor approved Act no. 1978–330 (53 P.S. § 5311.101 et seq.) reinstating governmental immunity with exceptions and limitations. In 1980 both of the 1978 acts were codified as a part of the Judicial Code and are now found at 42 Pa.C.S. § 8521 et seq. with the portion relating to governmental immunity beginning at section 8541.

*Id.* The extent to which these subsequent legislative enactments have incorporated, modified, or codified any aspects of the common law doctrines of governmental and official immunity has been the subject of much debate, case law, and law review commentary. *See, e.g.,* Michael R. Bucci, Jr., *Judicial Clarification of a Common Law Doctrine: The Pennsylvania Doctrine of Official Immunity,* 84 Dick. L.Rev. 473 (1980) (*Bucci* ).

### A. Section 8541 Governmental Immunity

■ Section 8541 of the Tort Claims Act establishes the general principle of governmental immunity, stating "[e]xcept as otherwise provided in this subchapter,[5] no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. Section 8542 provides a list of exceptions to governmental immunity. Section 8542(a) requires that two conditions must be satisfied before a local agency is liable for injury to a person or property:

> (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
>
> (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

42 Pa.C.S. § 8542(a)(1)-(2). Section 8542(b) enumerates eight acts by a local agency or its employees that may result in the imposition of liability on the local agency, none of which are applicable in this case. However, our inquiry does not end there because our Supreme Court recently examined the issue of whether "governmental immunity extends to all statutory causes of action, whether arising in tort or contract, subject only to the eight exceptions enumerated" in Section 8542(b). *Meyer v. Community College of Beaver County,* 606 Pa. 539, 541, 2 A.3d 499, 500 (2010). In *Meyer,* former students of the Community College of Beaver County (College), who had completed a substantial portion of a police training program when the College lost its certification, filed various claims against the College, including claims under the Unfair Trade Practices and Consumer Protection Law (UTPCPL).[6] After the close of pleadings and discovery, the College moved for "partial summary judgment on the UTPCPL claims," contending that it was immune pursuant to Section 8541 and that, as a

---

5. Neither party argues that the exceptions enumerated in Section 8542 of the Act apply in this case.

6. Act of November 24, 1976, P.L. 1166, *as amended,* 73 P.S. §§ 201–1–201–9.3.

local agency, it was immune for any damages on account of any injury to a person or property caused by any act of the local agency, subject only to the eight exceptions of Section 8542(b). *Meyer*, 606 Pa. at 542, 2 A.3d at 500. The trial court denied the motion on the ground that governmental immunity was directed at tort actions and the UTPCPL sounded in contract. This Court reversed in a divided en banc opinion. The majority of this Court concluded that "local agencies are immune from *all* statutory causes of action, whether arising in contract or tort, as long as they do not implicate any of the eight exceptions to governmental immunity." *Id.* at 543, 2 A.3d at 501. However, the Supreme Court reversed, concluding that "the language of the statute conferring governmental immunity, and of that implementing the exceptions, pertains to conduct causing 'injury to a person or property.'" *Id.*, 606 Pa. at 544–45, 2 A.3d at 502 (quoting 42 Pa.C.S. §§ 8541, 8542). The Supreme Court continued:

> In line with the extant understanding of the Political Subdivision Tort Claims Act, we believe the Legislature centered the immunity there conferred on "injury to a person or property" as a reflection of traditional tort jurisprudence.

*Id.*, 606 Pa. at 545, 2 A.3d at 502. The Supreme Court indicated that "the long-prevailing understanding concerning the Tort Claims Act's reach" and "overall purpose . . . is to limit governmental exposure to *tort* liability for its acts." *Id.*, 606 Pa. at 543, 2 A.3d at 501 n. 4, 502 (quoting *Flood v. Silfies*, 933 A.2d 1072, 1076 n. 7 (Pa. Cmwlth.2007)) (emphasis in original). Although the Supreme Court's focus in *Meyer* was its concern regarding the unintended effects of interpreting the Tort Claims Act in a manner that could impair the enforceability of contracts, which is not an issue in the case at bar, the Supreme Court held that "governmental immunity does not extend to all statutory causes of action, *regardless of whether they sound in tort or contract.*" *Id.*, 606 Pa. at 546, 2 A.3d at 503 (emphasis added).

Most importantly for the instant case, the Supreme Court in *Meyer* further stated that it rejected precisely the mechanical approach to governmental immunity that has often been applied, whereby a local agency is found to be immune unless the claim falls within one of the eight exceptions to immunity set forth in Section 8542(b). *Id.*, 606 Pa. at 546, 2 A.3d at 503 n. 6. Thus, after *Meyer*, in considering whether the governmental immunity of Section 8541 applies to Dorsey's claim—a statutory claim under Section 3172 of the PEF Code—we can no longer assume that governmental immunity exists simply because this case does not fall within any of the eight enumerated exceptions to immunity.

Additionally, the trial court relied on *Antonis* when it granted summary judgment in Defendants' favor. That case involved a statute dating back to 1875 that created a statutory cause of action requiring the recorder of deeds (recorder) to index every recorded deed and mortgage "in its appropriate place and manner[,] . . . and in case he *neglects* to do so[,] he and his sureties shall be liable in damages to any person aggrieved by such *neglect.*" *Antonis*, 821 A.2d at 668 (quoting Section 2 of the County Code, 16 P.S. § 9852 [7]) (emphasis added). In *Antonis*, the purchaser/mortgagor's name was misspelled when the mortgage was recorded, causing it to be incorrectly indexed. When the property was later sold, the purchasers did not have notice of the mortgage and the mortgagee did not receive his loan payoff.

---

7. Act of March 18, 1875, P.L. 32, 16 P.S. § 9852.

The mortgagee, after first suing "the purchasers of the property, who successfully defended on the grounds that they had no notice of the mortgage," sued his real estate attorney, who then joined the recorder and the seller's estate. *Id.* at 667. The trial court, in *Antonis,* did not grant immunity to the recorder, finding that the case involved the loss of a contract right to money, not an injury to person or property. A jury found in favor of the mortgagee, and the trial court denied post trial motions. On appeal to this Court, the recorder argued that she was immune pursuant to Section 8541, this Court agreed, and reversed, instructing the trial court, on remand, to enter judgment in favor of the recorder and against the mortgagee. We stated that it was the duty of the mortgagee, or his attorney, to see that the mortgage was correctly indexed and that he could not shift that obligation to an innocent purchaser. *Id.* at 670.

*Antonis* is distinguishable from the instant case. In *Antonis,* the statute at issue required one to be aggrieved by the recorder's *neglect, id.* at 668, but, in the instant case, Section 3172 does not require neglect on the part of the Register, but only the failure to secure a bond when one is required. Accordingly, we conclude that the trial court erred when it granted summary judgment to Register as a matter of law pursuant to Section 8541 because: (1) *Meyer* no longer permits us to assume that when one of the eight exceptions under Section 8542(b) is not present, it necessarily follows that governmental immunity under Section 8541 applies; and (2) the language of the statute in *Antonis* is distinguishable in that it required "neglect"

and, therefore, that case neither controls the outcome here nor necessarily supports the application of Section 8541 in this matter.

## B. Section 8546 Official Immunity

 Having concluded that the trial court could not grant summary judgment in favor of Register based upon Section 8541, we next address whether Register could, as an employee of a local agency,[8] nonetheless assert the defense of official immunity under Section 8546. That section provides, in relevant part:

> In any action brought against an employee of a local agency for damages on account of an injury to a person or property based upon claims arising from, or reasonably related to, the office or the performance of the duties of the employee, the employee may assert on his own behalf, or the local agency may assert on his behalf:
>
> (1) Defenses which are available at common law to the employee.
>
> (2) The defense that the conduct of the employee which gave rise to the claim was authorized or required by law, or that he in good faith reasonably believed the conduct was authorized or required by law.

42 Pa.C.S. § 8546(1), (2). Because the language of Section 8546(2) specifically raises the issues of whether: (1) the conduct of the official which gave rise to the claim was authorized or required by law; or (2) the official, in good faith, reasonably believed that his conduct was authorized or required by law, we must examine Register's conduct within the specific facts of

8. Register, as an employee of the Office of the Register of Wills, is a county employee, and a county is a local agency pursuant to the definition of "local agency" in Section 8501 of the Judicial Code, 42 Pa.C.S. § 8501, applicable to the chapter containing the governmental and official immunity provisions at issue in this case. *Simko v. County of Allegheny,* 869 A.2d 571, 573 (Pa.Cmwlth.2005). Therefore, Register qualifies as an employee of a "local agency."

this case. There is no dispute that Register's conduct in failing to require a bond of Keefer occurred in the course and scope of his official duties. Therefore, Section 8546 may have application here. However, there is a question whether Register's failure to require the bond from Keefer was an exercise of judgment and, therefore, discretionary, or whether it was a breach of an absolute duty and, therefore, no discretion could have been exercised. *See generally, Bucci*, 84 Dick. L.Rev. 473, 482, 487, 488, 490 (discussing official immunity).

■ The trial court concluded, and the Register asserts, that the defense of official immunity is available to Register in this case. Official immunity has its origins in English common law, and was adopted in the United States for similar reasons of preserving independent decision-making by public officials. *Bucci*, 84 Dick. L.Rev. at 476–77, 479. The principle arises from the necessity of permitting those in positions of governmental decision-making to have the ability to take decisive action, within the scope of their authority, and to function without the constant concern for vexatious litigation and unknown and unlimited damage awards. *Montgomery v. Philadelphia*, 392 Pa. 178, 140 A.2d 100 (1958); *Yealy v. Fink*, 43 Pa. 212 (1862). The public policy supporting the doctrine is that "a public servant must be free to exercise his judgment unhampered by the fear of unpredictable liability." *DuBree v. Commonwealth*, 481 Pa. 540, 544, 393 A.2d 293, 295 (1978). Historically, there has

been recognition of the distinction between malicious and reckless acts, even if performed within the official's scope of authority, for which no official immunity has been available, *Burton v. Fulton*, 49 Pa. 151 (1865); *Yealy*, 43 Pa. 212, and those acts performed in good faith by officials having a reasonable belief that their actions are authorized or even required. *Bucci*, 84 Dick. L.Rev. at 474, 477. Section 8546 embodies the present legislative enactment of this principle of official immunity for local agencies and local agency employees. When local officials have acted in good faith, reasonably believing that their conduct was authorized or required by law or when their conduct was authorized or required by law, such local officials may assert official immunity. There is no allegation in this case that the Register acted maliciously or recklessly, which would preclude him from asserting official immunity. Section 8550 of the Tort Claims Act, 42 Pa.C.S. § 8550 (stating that official immunity does not apply when there has been a judicial determination of, *inter alia*, actual malice or willful misconduct);[9] *see generally Edmondson v. Zetusky*, 674 A.2d 760 (Pa.Cmwlth.1996) (holding that mayor's conduct did not rise to the level of willful misconduct[10] per Section 8550 so as to strip her of her official immunity under Section 8546). Because this case involves determining whether the Register was authorized or required by law to secure a bond from Keefer, or whether he in good faith rea-

9. Section 8550 provides:
In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity),

8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.
42 Pa.C.S. § 8550.

10. "[T]he existence of willful misconduct is a question of law that 'must be judicially determined.'" *Kuzel v. Krause*, 658 A.2d 856, 860 (Pa.Cmwlth.1995) (quoting 42 Pa.C.S. § 8550).

sonably believed that his actions were authorized or required by law pursuant to Section 8546, under the particular circumstances of this case it is essentially *the exercise of judgment* by Register that we must examine vis-à-vis the requirements of Section 3172 of the PEF Code.

Dorsey argues that Section 8546 does not apply here because Section 3172 creates an absolute duty on Register to require a bond from Keefer and, therefore, as a matter of law, he could have no reasonable belief that he was authorized or required to do otherwise. Essentially, Dorsey's position is that Section 3172 provides for absolute liability, without regard to the particular facts or circumstances of the case; therefore, there can be no official immunity once Section 3172 has been invoked. Dorsey additionally argues that Section 8546 is not applicable here because it applies only to tort claims and her claim is a contract action. (Dorsey Br. at 16.)

In reviewing Dorsey's arguments, we must weigh those arguments against Section 8546, which is derived from the necessity to protect the exercise of judgment by public officials. Because this action stems from Dorsey's claim that Register failed to do something that allegedly caused "damages on account of an injury to a person or property based upon claims arising from, or reasonably related to, the office or the performance of the duties of the employee," 42 Pa.C.S. § 8546, we must consider Dorsey's claims within the framework of this statute. We recognize that Section 3172 of the PEF Code statute creates a statutory cause of action, but the fact that Dorsey's claim arises from a statutory cause of action does not necessarily transform it into a contract claim, as she has alleged. There are none of the elements of a contract (i.e., offer, acceptance, and consideration) between Dorsey and Register. We believe that what Dorsey alleges is a failure by Register to secure a bond; that is, a failure to do something that may have been required by law by a public official, and this failure, she alleges, has caused damages to accrue to her. This claim would, therefore, appear to be within the ambit of Section 8546, which applies when an employee of a local agency has caused "damages on account of an injury to a person or property based upon claims arising from, or reasonably related to, the office or the performance of the duties of the employee." 42 Pa.C.S. § 8546. For this reason, we conclude that Section 8546 *may* apply and bears closer examination here.

From the procedural history of this case and the file of the orphan's court, we note that Register first refused to grant Letters to Keefer upon her initial application to him. Keefer then immediately petitioned the orphan's court to give her what Register had just refused: the issuance of Letters without the need for a death certificate, ostensibly to allow for release of the Decedent's remains for burial. Keefer submitted a sworn statement that there was no real estate, the assets were unknown,[11] Keefer was the Decedent's friend for more than thirty years, and the Decedent did not have any relatives. Although Register testified that Keefer verbally told him there were no assets in the Estate, (Register's Dep. at 49, R.R. at 286), and presented a Power of Attorney allegedly executed by the Decedent, no credibility determination or finding of fact has been made about this issue because this case

---

11. It appears that, had a bond been issued when Letters were granted to Keefer, the bond would have been nominal because Register testified that Keefer swore under oath that there were no assets at the time she was appointed Administratrix. (Register's Dep. at 49, R.R. at 286.)

was dismissed on summary judgment prior to a trial on the merits. In response to what appeared to be particularly exigent circumstances, the orphan's court issued the Keefer Order:

AND NOW, this 1st day of February, 2006, upon consideration of the foregoing Petition, same having been presented in open Court, it is hereby *ordered and directed* that Donald D. Redman, Register of Wills of Fayette County, Pennsylvania, *is hereby authorized and directed to issue Letters* of Administration to Cheryl L. Keefer pursuant to 20 Pa.C.S.A. § 3155(a)(5) without the necessity of requiring a death certificate; it is further ordered and directed that the Mon Valley Hospital shall release the remains of the decedent, Andre Leonti, to Cheryl L. Keefer for the appropriate funeral and burial services.

(Keefer Order, R.R. at 158, 444 (emphasis added).) The imperative and immediate directive of the Keefer Order can be contrasted with the Dorsey Order removing Keefer as Administratrix more than one year later, and appointing Dorsey, which provides in relevant part:

AND NOW, this 28th day of February, 2007, upon consideration of the foregoing Petition, it is hereby ordered, adjudged and decreed that:

1) Cheryl L. Keefer is hereby removed as Administratrix.

2) The Register of Wills is directed to grant Letters of Administration to Elvira A. Dorsey, *upon presentation of an appropriate Petition for Grant of Letters.*

(Dorsey Order, R.R. at 168, 448 (emphasis added).) The orphan's court, in the Dorsey Order, did not "authorize and direct" Register to issue Letters to Dorsey, but directed him to grant her Letters only *"upon presentation of an appropriate Petition for Grant of Letters."* (Dorsey Or-

der, R.R. at 168, 448 (emphasis added).) This contrasts with the directive in the Keefer Order, written as a mandate in which Register was "hereby ordered and directed ... *to issue Letters* " without the need for a death certificate and also further "ordered and directed that the Mon Valley Hospital shall release the remains of the decedent ... for appropriate funeral and burial services." (Keefer Order, R.R. at 158, 444.) Register argues that the Keefer Order was not an order for him to second-guess or delay its enforcement by adding a bonding requirement. Having just refused the issuance of Letters to Keefer the day before, Register was now confronted with the Keefer Order directing him to issue the Letters, which would facilitate the funeral and burial of the Decedent. The trial court described the situation, stating:

He [Register] denied letters. Then one of us, wearing the black robe, says, "Issue [L]etters." .... I mean he's a little guy now in the gristmill being ground up because one of us had said, "Issue [L]etters." .... You've never been in the position when somebody in a black robe says do something, and then listen to it when you don't do it..... Well it's not a good position to be in, let me tell you..... [H]e took the [Keefer O]rder literally and did literally what the [Keefer O]rder said, issued the letters.... The [Keefer O]rder ordered him to issue the letters.

(Hr'g Tr. at 33–36, 38, R.R. at 726–29, 731.)

Dorsey claims that Register should not have immediately responded to the Keefer Order, notwithstanding the language of that order and the urgent circumstances, and instead should have waited to obtain a bond from Keefer. Register argues that, under the circumstances, he should be able to argue either that his actions were "au-

thorized or required by law" or "that he in good faith *reasonably believed* the conduct was authorized or required by law." 42 Pa.C.S. § 8546(2) (emphasis added).

This case involves the exercise of judgment by a local agency official in the face of what appears to have been exigent circumstances and a court order directly ordering that official to do what he just one day before refused to do. As Justice Alito stated before becoming a justice of the United States Supreme Court, official immunity "aims to exclude the 'plainly incompetent' and 'those who knowingly violate the law.'" *Forbes v. Township of Lower Merion*, 313 F.3d 144, 148 (3d Cir.2002) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).[12] "If an official *could have reasonably believed* that his or her actions were lawful, the official receives immunity even if in fact the actions were not lawful." *Id.*

Because this case is before this Court on appeal from the grant of the Motion, "[t]he record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Raker v. Pennsylvania Department of Corrections,*

844 A.2d 659, 661 n. 4 (Pa.Cmwlth.2004). In this case, whether Register could, in good faith, have reasonably believed that his actions were authorized by the Keefer Order, even if his actions were not lawful, is a question of material fact.[13] This material fact is disputed and must be determined by a fact finder. Thus, summary judgment on this issue is not appropriate. We also note that, even had we found that Register was not entitled to official immunity, Dorsey would not be entitled to the grant of her Cross–Motion because there is a material question of fact as to what damages have accrued to Dorsey as a result of Register's failure to require a bond. Although Dorsey argues that a bond was required by law, there is no evidence as to the amount of the bond that would have been required by law under the specific facts of this case. There has been testimony that the bond that would have been required was a nominal bond. Therefore, the amount of the bond that would have been required by the PEF Code, and the damages which accrued because of the absence of such bond, would remain to be determined.

We hold that Register is not entitled to summary judgment based upon governmental immunity under Section 8541 of the

**12.** The development of official immunity in the federal courts derives from the same common law principles as Pennsylvania's doctrine of official immunity, which also arose from common law, although the extent to which Pennsylvania's legislative enactments thereof comprise such common law doctrine remains the subject of much debate. *See infra* n. 12.

**13.** In a discussion about the common law development of official immunity, the United States Supreme Court has stated:
the public interest requires decisions and action to enforce laws for the protection of the public..... Public officials ... who fail to make decisions when they are needed or who do not act to implement decisions when they are made do not fully and faithfully perform the duties of their offices.

Implicit in the idea that officials have some immunity—absolute or qualified—for their acts, is a recognition that they may err. The concept of immunity assumes this and goes on to assume that it is better to risk some error and possible injury from such error than not to decide or act at all..... 'The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government.'
*Scheuer v. Rhodes*, 416 U.S. 232, 241–42, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (quoting *Barr v. Matteo*, 360 U.S. 564, 572–73, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959)), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) (citations omitted) (footnote omitted).

Tort Claims Act. However, on the facts of this case, the clear language of Section 8546 requires that Register shall be permitted to raise the defense of official immunity during the proceedings if the trial court determines, based on the testimony and evidence, that a fact-finder could find that he, in good faith, reasonably believed his conduct was authorized or required by law. Dorsey's action against Register must, therefore, proceed. In accordance with the foregoing opinion, the Order of the trial court granting the Motion is vacated, and we remand this matter for further proceedings in accordance with the foregoing opinion.

Senior Judge FRIEDMAN concurs in the result only.

### ORDER

**NOW,** May 4, 2011, the Order of the Court of Common Pleas of Fayette County in the above-captioned matter is hereby **VACATED and this matter is REMANDED** to the Court of Common Pleas of Fayette County for further proceedings in accordance with the foregoing opinion.

Jurisdiction relinquished.