2005 VT 113

**Lakeisha JACKSON and Brenda Edwards v. Thomas R. HENDRICKS, Jr.**

[893 A.2d 292]

No. 04-239

¶ 1. October 24, 2005. Lakeisha Jackson and Brenda Edwards appeal from a family court order that awarded Thomas Hendricks legal and physical parental rights and responsibilities for Elijah Hendricks. Appellants contend that: (1) the Vermont family court lacks

jurisdiction over this matter because the Florida courts are a more appropriate forum; and (2) even if it has jurisdiction, the family court has no authority to terminate Brenda Edwards' guardianship of the child, which was instituted by order of the Connecticut probate court. We reject these arguments and affirm the family court.

¶ 2. The family court made the following findings. Lakeisha Jackson gave birth to Elijah in February 1997. During the first year of the child's life, Jackson lived with her mother, Brenda Edwards, in Connecticut. In February 1998, Jackson decided to enlist in the Navy, and the Connecticut probate court awarded Edwards legal guardianship of Elijah with Jackson's agreement. At that time, the Connecticut court stated that it had made no determination regarding the rights of Thomas Hendricks — who claimed to be Elijah's father and opposed the guardianship — because Hendricks had not established paternity. In July 1999, however, guardian and mother sought an order in the Vermont family court obligating Hendricks, a resident of Vermont, to pay child support to guardian. As part of those proceedings, mother and guardian acknowledged Hendricks' paternity, and the court issued orders establishing Hendricks' parentage and requiring him to pay child support.

¶ 3. In August 2002, guardian moved to Florida and left Elijah with mother, who was stationed in Virginia. In November of that year, the Navy reassigned mother to Florida, and Elijah lived with her in Florida for the next month. In December, mother learned that she was scheduled for sea duty, and guardian was unable to care for Elijah as she settled into a new home and job. Given these circumstances, guardian and mother decided to ask father to take care of Elijah for the remainder of the school year. Father picked up Elijah on December 31, 2002, and took him to his home in Vermont.

¶ 4. On January 9, 2003, father filed a motion in the Vermont family court seeking sole legal and physical parental rights and responsibilities for Elijah. In his supporting affidavit, father acknowledged that Elijah had been with him for only a few days, and he recounted the boy's recent movement from Virginia to Florida. He went on to state that mother was shipping out with the Navy and said that she agreed Elijah should live with him. Father advised the court that he needed a custody order to enroll Elijah in school, but he made no mention of Edwards' role as Elijah's legal guardian. He simultaneously moved the court to modify the existing child support order. On January 22, the court awarded father temporary legal and physical parental rights and responsibilities, and scheduled a case manager's conference for March 11. At the conference, the case manager issued an entry stating: "Plaintiff shall file objection within 30 days of service of this order if she requests hearing. If no objection filed, order shall become final." On May 27, the order became final. At some point after mother learned of father's intentions, she contacted the Florida courts and was told she needed to pursue a remedy in Vermont.

¶ 5. On August 1, guardian filed a motion to modify or reconsider the order awarding father legal and physical parental rights and responsibilities. She argued that the Vermont family court did not have jurisdiction to determine Elijah's custody because he had not lived in the state for six months prior to father's motion. She also claimed that father was refusing to allow mother to have contact with Elijah, and expressed concerns about father's ability to care for the child. Appellants did not ask the court to award mother parental rights and responsibilities, but instead sought to reestablish Edwards' guardianship of Elijah. The court scheduled evidentiary hearings for December 3, 2003 and February 4, 2004.

¶ 6. After the hearings, the court found that mother and guardian had not received written notice of father's motions until May 24, 2003 — just three days before the custody order became final. The court noted that mother participated by telephone in the case manager's conference of March 11, but found that mother was not aware that father was in the process of seeking sole legal and physical parental rights and responsibilities. On May 20, guardian participated by telephone in a second case manager's conference, during which she learned of father's intentions for the first time. Guardian and mother then received written notice on May 24. Given the lack of notice, and father's failure to identify guardian upon filing his motion, the court decided to treat its order granting father custody as temporary, and treated guardian's later motions as objections to that status.

¶ 7. The court then concluded that it had jurisdiction to modify parental rights and responsibilities under the Uniform Child Custody Jurisdiction Act (UCCJA), 15 V.S.A. § 1032(a)(4), and the Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C. § 1738A (1994 & Supp. 2005). The court recognized that Vermont was not Elijah's "home state" at the time father filed his motion, but it found that, due to mother's recent relocations, Elijah did not have a home state as defined in the UCCJA. See 15 V.S.A. § 1031(5) (defining child's "home state" as the one in which the child, immediately preceding the relevant time period, lived with his parents, a parent, or a person acting as a parent, for at least six consecutive months). Given these circumstances, the court found that it was in Elijah's best interest for it to assume jurisdiction pursuant to 15 V.S.A. § 1032(a)(4). It further found that its assumption of jurisdiction was consistent

with § 1738A(c) of the PKPA. The court then made findings of fact and reviewed Elijah's circumstances relative to the factors that the Legislature has established for custody determinations, see 15 V.S.A. § 665(b), and awarded father legal and physical parental rights and responsibilities. This appeal followed.

¶ 8. Appellants argue that the Vermont court lacked jurisdiction to terminate the Connecticut order that appointed Brenda Edwards as Elijah's legal guardian. They maintain that only a Connecticut probate court has that authority. According to appellants, even if this Court concludes that the Vermont court did have jurisdiction to terminate the guardianship order, then Florida, rather than Vermont, was the more appropriate forum for any custody determination because the child's mother and guardian resided there. Appellants maintain that there is insufficient evidence to support the family court's finding that Florida had declined jurisdiction over the case. As discussed below, we find these arguments without merit.

¶ 9. As this case involves the Vermont family court's modification of an existing child custody decree — the Connecticut order that awarded legal guardianship of Elijah to Edwards — we turn first to the PKPA.* See *Matthews v. Riley*, 162 Vt.

---

* We consider the Connecticut guardianship order to be a "custody determination" within the meaning of the PKPA. The PKPA defines a "custody determination" as "a judgment, decree, or other order of a court providing for the custody of a child, and includes permanent and temporary orders, and initial orders and modifications," 28 U.S.C. § 1738A(b)(3), and a "modification" as "a custody or visitation determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody or

401, 404, 649 A.2d 231, 235 (1994) ("Jurisdiction over interstate enforcement and modification of child custody decrees is governed by the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A."). With certain exceptions, a state must enforce the custody orders of other states when they are made consistently with the requirements of the PKPA. 28 U.S.C. § 1738A(a). A state may modify such orders if "(1) it has jurisdiction to make such a child custody determination; and (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination." 28 U.S.C. § 1738A(f)(1)-(2). The UCCJA similarly provides that the Vermont family court

visitation determination concerning the same child, whether made by the same court or not," *id.* § 1738A(b)(5). See also 15 V.S.A. § 1031(4) (defining "custody decree" as "a custody determination contained in a judicial decree or order made in a custody proceeding"); *In re Cifarelli*, 158 Vt. 249, 253-54, 611 A.2d 394, 397 (1992) (applying UCCJA to determine if Vermont retained jurisdiction over custody dispute by virtue of guardianship orders issued by Vermont probate court); *In re Pima County Juvenile Action No. J-78632*, 711 P.2d 1200, 1206 (Ariz. Ct. App. 1985) (holding that Arkansas guardianship order was "custody determination" for purposes of applicability of the PKPA), *affirmed in part, and vacated in part on other grounds*, 712 P.2d 431 (Ariz. 1986) (en banc); *Elam v. Elam*, 832 S.W.2d 508, 510 (Ark. Ct. App. 1992) (holding that Arkansas court, in course of divorce proceeding, was required to recognize prior Tennessee order granting legal guardianship of child to his grandparents, pursuant to the Arkansas version of the UCCJA, particularly where Tennessee court continued to have jurisdiction in the matter).

may modify the order of another state when "(1) it appears ... that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with [the UCCJA] or has declined to assume jurisdiction to modify the decree; and (2) the court of this state has jurisdiction." 15 V.S.A. § 1042(a)(1)-(2). Thus, to determine if the Vermont family court had the authority to modify the Connecticut guardianship order, we must first examine if the Vermont family court had jurisdiction over this dispute.

¶ 10. Under the UCCJA, the Vermont family court has jurisdiction to make a child custody determination by initial or modification decree if: (1) Vermont is the child's home state; (2) it is in the child's best interests for Vermont to assume jurisdiction because the child and his parents, or the child and one of the contestants, have a significant connection to the state and there is substantial evidence available in this state concerning the child's present or future care, protection, training, and personal relationships; or (3) if the child is physically present in the state and he or she has been abandoned or is in need of emergency assistance due to neglect or abuse. *Id.* § 1032(a)(1)-(3). The Vermont family court also has jurisdiction to make a child custody determination by initial or modification decree when

> it appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivisions (1), (2), or (3) of this subsection, or another state has declined to exercise jurisdiction on the ground that [Vermont] is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

*Id.* § 1032(a)(4).

¶ 11. In this case, the family court found that Elijah did not have a home state under 15 V.S.A. § 1031(5) at the time that father filed his motion. The court also found that Florida had apparently relinquished any claim of jurisdiction over the case. Appellants contend that the evidence does not support this latter finding. We need not resolve this dispute to decide this case because it is apparent from the record that Florida was not the child's home state. At the time that father filed his motion, Elijah and his mother had spent just over a month in Florida. Prior to that time, Elijah had resided in Virginia for three months, and, before that, he had lived in Connecticut for five years. No Florida court had exercised jurisdiction over any part of Elijah's case, and Elijah was not present in Florida. Moreover, as the family court found, no party asserted that Connecticut should have taken jurisdiction of this case, and, indeed, no party resided in Connecticut at the time of the filing. Thus, although the family court erred in finding that Florida could have exercised jurisdiction, the Vermont court's exercise of jurisdiction was nonetheless appropriate under 15 V.S.A. § 1032(a)(4) because no other state had jurisdiction over Elijah, and it was in the child's best interests for Vermont to assume jurisdiction. See 1 A. Haralambie, Handling Child Custody, Abuse and Adoption Cases § 2.06, at 22 (2d ed. 1993) ("The most typical circumstances under which a state exercises this type of jurisdiction is where the parties have moved frequently and have recently moved to different states.").

¶ 12. Accordingly, the Vermont family court also had jurisdiction to modify the Connecticut custody order, which we assume arguendo was issued in compliance with the requirements of the PKPA. See 28 U.S.C. § 1738A(f) (authorizing court to modify custody order made by

court of another state). Under the PKPA, Connecticut no longer had jurisdiction over this matter. Connecticut was not the child's home state, none of the parties resided there, and nothing in the record suggested that, at the time of the filing, the parties had a "significant connection" to that state or that substantial evidence was available in that state concerning Elijah's present or future care, protection, training, and personal relationships. *Id.* § 1738A(c), (f)(2). We reject appellants' assertion that Connecticut maintains "continuing jurisdiction" by virtue of the guardianship order. To establish "continuing jurisdiction" under the PKPA based on the issuance of a custody order, a state must meet the jurisdictional criteria described in 28 U.S.C. § 1738A(c), and the child or one of the contestants must reside in the state. 28 U.S.C. § 1738A(d). As discussed above, none of these criteria is satisfied.

¶ 13. We addressed an analogous situation in *In re Cifarelli*, 158 Vt. 249, 611 A.2d 394 (1992). In that case, a child, who had been living in Vermont, was placed in temporary state custody after her parents died. The child's maternal grandmother obtained a guardianship appointment from a Vermont probate court, and returned with the child to her home in Bermuda, where she commenced adoption proceedings. During this time, the child's paternal grandmother also filed a guardianship petition in Vermont probate court. The maternal grandmother moved to dismiss the petition for lack of subject matter jurisdiction. The Vermont probate court concluded that the UCCJA did not apply, and it issued several orders relating to custody and visitation. On appeal, the paternal grandmother conceded that the UCCJA applied and that Bermuda was a "state" for purposes of the Act, but she asserted that Vermont had continuing jurisdiction by virtue of the guardianship order. We rejected this argument. We reasoned

that although the probate court had jurisdiction to issue the initial guardianship petition under 14 V.S.A. § 2645(1) and under the UCCJA, 15 V.S.A. § 1032(a)(3), the emergency guardianship order ceased to have any effect once its purpose was accomplished. *In re Cifarelli*, 158 Vt. at 252, 611 A.2d at 396. At that point, we stated, "[j]urisdiction to determine future custody and visitation issues was no longer in any Vermont court." *Id.*

¶ 14. As we explained in that case:

> The UCCJA is intended to eliminate the adverse consequences of multi-jurisdictional disputes over custody and visitation of children. The Act seeks to avoid shifting jurisdiction over children from state to state by requiring that the custody decree be "rendered in that state which can best decide the case in the interest of the child." The Act achieves this goal by encouraging courts to communicate with one another and by limiting custody jurisdiction to a child's home state or, if no home state exists, to the state with the strongest contacts with the child and the child's family.

*Id.* at 253, 611 A.2d at 396-97 (citation omitted). We concluded that Vermont could not retain continuing jurisdiction under the UCCJA because Vermont was not the child's "home state," and, in fact, the child had no home state. *Id.* at 253-54, 611 A.2d at 397. No other UCCJA factors supported continuing Vermont jurisdiction. *Id.* at 254-55, 611 A.2d at 397-98.

¶ 15. Significantly, the paternal grandmother argued that Vermont Rule of Probate Procedure 3(d), which provides that "a probate proceeding involving a guardianship shall ... continue until the guardianship is closed," as well as other sources that outlined basic jurisdictional principles, mandated that Vermont as-

sume jurisdiction over the custody determination. We rejected this argument, finding that it disregarded the UCCJA,

> which requires, regardless of jurisdictional rules to the contrary, that the interests of a child involved in a multi-jurisdictional custody dispute are to be addressed in the forum with the strongest ties to the child either by virtue of home state jurisdiction, or if no home state exists, according to the other UCCJA factors.

*Id.* at 255-56, 611 A.2d at 398. We similarly rejected the argument that Vermont retained jurisdiction because it was the state in which the guardianship petitions had been originally filed. *Id.* at 256, 611 A.2d at 398 (citing *Kioukis v. Kioukis*, 440 A.2d 894, 897-98 (Conn. 1981) ("The first state's exclusive jurisdiction . . . does not continue indefinitely. At some point the child's connections with the first state become too tenuous to satisfy the demands of [the UCCJA].")). As we explained, given the ample evidence that existed in Bermuda concerning the child's best interests, Vermont case law could not be interpreted "to justify a blind application of the principle that continuing jurisdiction exists merely because Vermont was the state that was the 'first in time.'" *Id.* at 256, 611 A.2d at 398-99 (citing *L.F.* v. *G.W.F.*, 443 A.2d 751, 754 (N.J. Super. Ct. App. Div. 1982) ("[O]ur common sense is offended by the concept that simply because a case is originally started in this State, all subsequent proceedings between the parties involving the original subject matter should be regarded as commenced here.")).

¶ 16. We are presented with the same situation here, albeit reversed. Connecticut does not retain jurisdiction forever over all matters concerning these parties. Its connection to the child has become too attenuated, and it is not in the child's best interests for that state to assume jurisdiction of this case. See *Columb v. Columb*, 161 Vt. 103, 112, 633 A.2d 689, 694 (1993) (recognizing that if child moves from place to place, proper forum to determine custody will change as moves are made, and the fact that the Vermont court did not have jurisdiction at one time should not foreclose that court from taking it when circumstances change; "[i]ndeed, failure to take jurisdiction will undermine the statutory purpose to adjudicate a custody dispute in the court best suited to do so."); see also Commissioner's Note, Unif. Child Custody Jurisdiction Act § 14, 9 U.L.A. 580 (1999) (explaining that the fact that court had previously considered a case may be one factor favoring its continued jurisdiction but if all the persons involved have moved away or contact with the state has otherwise become slight, modification jurisdiction shifts elsewhere). Under the PKPA, and consistent with the purposes of that Act and the UCCJA, Vermont had jurisdiction to modify the Connecticut order.

¶ 17. Having established that the family court had jurisdiction, we turn to its discretionary decision to modify the voluntary guardianship order and grant father custody of Elijah. Although the pre-existing order was a guardianship order, the family court, rather than the probate court, had jurisdiction over this matter. See 4 V.S.A. § 454(7) ("Notwithstanding any other provision of law to the contrary, the family court shall have exclusive jurisdiction to hear and dispose of . . . [a]ll uniform child custody proceedings filed pursuant to chapter 19 of Title 15."). In *Boisvert v. Harrington*, 173 Vt. 285, 288, 796 A.2d 1102, 1105 (2002), we acknowledged that no specific statute provides guidance for termination of a guardianship created under 14 V.S.A. § 2654(4). We concluded, however, that such a termination requires a find-

ing, after a hearing, that the circumstances which precipitated the transfer of custody no longer pertain. *Boisvert*, 173 Vt. at 289, 796 A.2d at 1106. As with all custody determinations, the termination of a guardianship order must be in a child's best interests, and the law presumes that those interests are best served by parental custody. *Id.* at 291, 796 A.2d at 1107. The same considerations must apply when the family court determines whether to terminate a guardianship order instituted in another state.

¶ 18. In this case, the family court made extensive findings regarding Elijah's best interests relative to the factors identified in 15 V.S.A. § 665(b). While it recognized that both father and guardian could provide a safe and supportive home, the court found that Elijah had developed strong relationships in Vermont, and it further acknowledged the presumption in favor of parental custody. Given these findings, the court awarded father legal and physical parental rights and responsibilities, but granted mother and guardian liberal visitation rights. The family court has broad discretion in determining a child's best interests and rendering a custody determination, *Payrits v. Payrits*, 171 Vt. 50, 52-53, 757 A.2d 469, 472 (2000), and we find no abuse of discretion here. We therefore affirm the family court's decision.

*Affirmed.*