96 A.3d 332

Elvira A. DORSEY, an Individual and as Administratrix
of the Estate of Andre Leonti, Deceased, Appellee

v.

Donald D. REDMAN, the Fayette County Register of
Wills, and Western Surety Company, Appellants.

Supreme Court of Pennsylvania.

Argued Oct. 17, 2012.

Decided July 21, 2014.

Marie Milie Jones, Esq., Jones Passodelis, PLLC, for Donald Redman and Western Surety.

Charles Brian Hadad, Esq., Alison Teresa Smith, Esq., for Elvira A. Dorsey.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice TODD.

In this appeal by allowance, we consider, *inter alia,* the applicability of governmental and official immunity [1] under the Political Subdivision Tort Claims Act ("Tort Claims Act") [2] with respect to a claim alleging a violation of bonding requirements mandated under the Probate, Estates and Fiduciaries Code ("PEF Code"). [3] Ultimately, we hold the General Assembly intended that 20 Pa.C.S.A. § 3172 of the PEF Code, which imposes liability on registers of wills and their sureties in granting letters of administration without security, created a targeted form of accountability for such registers, resting outside the scope of governmental and official immunity. Therefore, we find Donald Redman, the Fayette County Reg-

---

1. "Governmental immunity" refers to immunity from tort liability of a local agency. *See* 42 Pa.C.S.A. § 8541; *Brown v. Commonwealth,* 453 Pa. 566, 305 A.2d 868, 872–73 (1973) (Pomeroy, J., concurring). Related thereto, "official liability" and "official immunity" concern the limitations on and defenses to liability of an individual employee of a local agency. *See* 42 Pa.C.S.A. § 8545, 8546. Finally, while not directly implicated in this appeal, "sovereign immunity" connotes immunity of the Commonwealth and its agencies. *See* 42 Pa.C.S.A. § 8521; *Snead v. SPCA of Pa.,* 604 Pa. 166, 985 A.2d 909, 913 (2009).

2. Act of Oct. 5, 1980, P.L. 693, No. 330 (codified as amended 42 Pa.C.S.A. §§ 8541–8542).

3. Act of June 30, 1972, P.L. 508, No. 164 (codified as amended 20 Pa.C.S.A. §§ 3171–3172).

ister of Wills ("Register"), is not immune under the Tort Claims Act from liability for an alleged violation of Section 3172. Further, we also determine, *inter alia*, that, in assessing the applicability of the defense of official immunity pursuant to 42 Pa.C.S.A. § 8546(2), the question is one for the court to determine, albeit, here, on a more developed factual record. Thus, we affirm the order of the Commonwealth Court remanding the matter to the orphan's court for further proceedings, consistent with the distinct reasoning set forth in our opinion today.

On January 30, 2006, Andre Leonti ("Decedent"), a resident of Brownsville, Fayette County, Pennsylvania, died intestate. Thereafter, Cheryl Keefer, a purported friend of Decedent, filed a petition with the Register for the grant of letters of administration which listed the heirs and personal assets of Decedent as "unknown" and indicated that there was no real estate. The Register refused to grant letters to Keefer because she did not have Decedent's death certificate, was not his next of kin, and, therefore, was not a person entitled to letters under the PEF Code. 20 Pa.C.S.A. § 3155(b). In response, Keefer, through her attorney, filed a petition on February 1, 2006 to authorize the Register to issue letters to her without producing a death certificate and further directing the Mon Valley Hospital ("Hospital") to release the remains of Decedent for a funeral and burial. Attached to this petition was a copy of a purported power of attorney executed by Decedent to her on January 10, 2006. In this petition, Keefer asserted that she had been a friend of the Decedent for 30 years and that he was unmarried at the time of his death, had no children or relatives, and that his parents had predeceased him. Keefer further reported that the Hospital would not release the body to her for burial because she was not a relative and that Decedent's remains would only be released to her if she were appointed to handle Decedent's estate. Furthermore, Keefer contended that she could not have funeral and burial services without estate assets to pay for these expenses, as well as other financial obligations of the estate.

No one contested this petition, and, on the same day the petition was filed, the orphan's court issued an order ("Keefer Order") authorizing and directing the Register to issue letters "without the necessity of requiring a death certificate," and further ordering and directing the Hospital to release Decedent's remains to Keefer for funeral and burial services. In compliance with this order, the Register issued letters to Keefer, but did not secure a bond from her. Several months later, on April 5, 2006, Keefer filed with the Register an inventory of the estate, indicating a total property value of $242,677.88.

One month later, Appellee Elvira Dorsey, a resident of Texas who claimed to be Decedent's niece, became aware of Decedent's estate, and her right to assets from the estate, as the alleged sole surviving heir of Decedent. Appellee petitioned for the removal of Keefer as administratrix. The orphan's court granted Appellee's petition, issued an order ("Dorsey Order") removing Keefer as administratrix, and required Keefer to deliver to Appellee the custody and possession of Decedent's estate's assets. The court also authorized and directed the Register to grant letters to Appellee upon presentation of an appropriate petition for the grant of letters. Keefer, however, did not deliver the assets of the estate to Appellee. Appellee was unable to locate the estate assets, and, therefore, Appellee obtained a second order from the orphan's court mandating that Keefer deliver the custody and possession of the estate records and assets to Appellee.

On October 26, 2007, the orphan's court issued an order holding Keefer in contempt, sentencing Keefer to six months imprisonment, and directing that a verdict be entered in favor of Appellee and against Keefer in the amount of $192,769.19. The court's order further stated that "By copy of this Court Order, [Appellee] may reduce such verdict to judgment in any appropriate office, whether that is the Office of the Register of Wills, or the Prothonotary, or both." Orphan's Court Order, 10/26/2007 (R.R. at 452). On November 13, 2007, Appellee filed praecipes for entry of judgment with the Fayette County

Prothonotary and the Register to enter judgment against Keefer.

Thereafter, Appellee filed a complaint, as amended, against the Register, individually, and Western Surety Company ("Surety").[4] In her complaint, Appellee alleged that the Register and Surety were liable for damages resulting from the Register's failure to secure bonding, which, Appellee asserted, was required by Section 3171 of the PEF Code when the Register issued letters to Keefer. Section 3171 of the PEF Code requires that, before letters may be granted to any personal representative, he or she must execute and file a bond in the name of the Commonwealth with sufficient surety in an amount the register deems necessary. 20 Pa.C.S.A. § 3171. Pursuant to Section 3172, "[i]f any register shall grant letters without having taken such bond as is required by law, he and his surety shall be liable to pay all damages which shall accrue to any person by reason thereof." 20 Pa.C.S.A. § 3172.

In response, the Register and Surety filed a motion for summary judgment alleging, *inter alia*, immunity from liability pursuant to the Tort Claims Act, which provides that (1) "no local agency shall be liable for any damages on account of any injury to a person or property," 42 Pa.C.S.A. § 8541; and (2) that an employee may be liable for civil damages on account of any injury to a person or property caused by his or her acts, "only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter." 42 Pa.C.S.A. § 8545. Appellee filed a cross-motion for summary judgment alleging she was entitled to recover upon her verdict against Keefer, which was reduced to judgment, and that the Register was liable for the judgment under 20 Pa.C.S.A. § 3172, since he did not secure a bond from Keefer when he granted letters to her.

The trial court granted the Register and Surety's motion, finding that the Register was entitled to immunity under Section 8541 of the Tort Claims Act, as the failure of a

4. Surety issued the public official bonds for the Register's office.

register to secure a bond is not one of the specific enumerated exceptions to immunity set forth in Section 8542 of the Act. Further, the trial court determined that the Commonwealth Court's decision in *Antonis v. Liberati*, 821 A.2d 666 (Pa. Cmwlth.2003), was dispositive, as in that case the Commonwealth Court determined that the office holder of an analogous position—there, a recorder of deeds—was immune from liability for failing to properly index a mortgage and note.

Additionally, the trial court opined that the defense of official immunity under Section 8546 of the Tort Claims Act, which provides an employee of a local agency a defense that the employee's conduct was authorized or required by law, or that the employee in good faith reasonably believed the conduct was authorized or required by law, was applicable, as the action of the Register was undertaken pursuant to the order of the orphan's court. 42 Pa.C.S.A. § 8546. Finally, according to the trial court, Surety was not liable, as its liability was based upon the liability of its principal, the Register. Appellee appealed to the Commonwealth Court.

On appeal, a three judge panel of the Commonwealth Court, in a published opinion, vacated the trial court's order and remanded the matter for further proceedings. *Dorsey v. Redman*, 22 A.3d 274 (Pa.Cmwlth.2011). Specifically, the Commonwealth Court reviewed the duties of a register under the PEF Code and its provisions holding a register accountable for Pennsylvania's bonding requirements, in the event a bond was not secured when "required by law." 20 Pa.C.S.A. § 3172. The court went on to trace the evolution of governmental and official immunity, focusing on the Tort Claims Act's general provision granting immunity from liability for claims against a local agency for damages, and the exceptions provided therein. 42 Pa.C.S.A. § 8541, 8542. The Commonwealth Court also surveyed the exceptions to government immunity contained in Section 8542, determining that none of the exceptions were applicable to the matter before it. The court then considered our Court's recent determination in *Meyer v. Comty. Coll. of Beaver Cnty.*, 606 Pa. 539, 2 A.3d 499 (2010). The Commonwealth Court explained that, in *Meyer*, our Court rejected the Commonwealth Court's broad construc-

tion of immunity, reasoned that the language of the Tort Claims Act conferring immunity reflected traditional tort jurisprudence, and ultimately concluded that immunity "does not extend to all statutory causes of action," but only to those sounding in tort. *Meyer*, 2 A.3d at 503 & n. 6. Thus, the Commonwealth Court reasoned that, after *Meyer*, it could not engage in a mechanical approach to governmental immunity whereby a local agency is found to be immune unless the claim falls within one of the eight exceptions found in Section 8542 of the Act. Additionally, the court distinguished *Antonis* on the grounds that, in that case, the statute upon which the claim was based spoke of "neglect," a tort concept, and no such requirement was present in the PEF Code. Accordingly, the Commonwealth Court concluded that the trial court erred in granting summary judgment to the Register as a matter of law pursuant to Section 8541.

Turning to the question of official immunity, the Commonwealth Court addressed the Register's defense that he was, as an employee of a local agency, entitled to official immunity under Section 8546 of the Tort Claims Act, as his conduct was authorized or required by law, or he in good faith reasonably believed his conduct was authorized or required by law. The Commonwealth Court, focusing on the orphan's court's directive to issue letters to Keefer, found the question of whether the Register's actions were authorized by the court's order regarding Keefer was a question of material fact for the factfinder, and, thus, concluded that summary judgment was not appropriate. Similarly, the court denied Appellee's cross-motion for summary judgment, as it determined that the amount of the bond required by the PEF Code was a factual issue for determination at trial. Thus, the Commonwealth Court found the Register was permitted to raise the defense of official immunity, but that this was a fact issue for trial, and remanded the matter for further proceedings. Senior Judge Friedman concurred in the result.

■ Our Court granted the Register's and Surety's (collectively, "Appellants") petition for allowance of appeal on the following issues:

a. Whether, under the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §§ 8541–8664, the Register of Wills is immune from suit under Section 3172 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. § 3172?

b. Whether, in assessing the applicability of official immunity under 42 Pa.C.S.A. § 8546, the issue of whether the official's conduct giving rise to the claim was authorized or required by law, or whether the official, in good faith, reasonably believed his conduct was authorized or required by law, is a genuine issue of material fact for a fact-finder to determine, or a legal issue to be decided by the trial court?

*Dorsey v. Redman,* 615 Pa. 328, 42 A.3d 1001 (2012) (order). While these issues arise in the context of the denial of a motion for summary judgment, which is subject to an error of law or abuse of discretion standard of review, *Abrams v. Pneumo Abex Corp.,* 602 Pa. 627, 981 A.2d 198, 203 (2009), the precise questions on which our Court granted allocatur constitute pure questions of law. Thus, our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Zortman,* 611 Pa. 22, 23 A.3d 519, 523–24 (2011) (explaining questions of statutory construction present pure questions of law, over which our review is *de novo* ).

Regarding governmental immunity, Appellants initially offer that the Tort Claims Act renders local agencies and their employees immune from tort claims except for those matters that fall within one of the statute's enumerated exceptions. Acknowledging our decision in *Meyer* and our Court's determination therein that governmental immunity does not extend to all statutory causes of action but only to tort claims, Appellants maintain that the first step in an immunity analysis, one which the Commonwealth Court failed to perform, is to determine whether the statutory claim at issue sounds in contract or tort. Appellants submit that the statutory claims at issue under Section 3172 of the PEF Code sound in tort, and not contract. Noting the *Meyer* Court's observation that "the central focus of contract law is the protection of bargained-for expectations," *Meyer,* 2 A.3d at 502, Appellants

contend that Appellee did not bargain with Appellants and had no bargained-for expectation, and that none of the elements of a contract, offer, acceptance, and consideration existed between Appellee and Appellants. Appellants instead assert that Appellee's statutory claim sounds in tort. While recognizing Appellee's claim does not speak of negligence, Appellants offer that neither do intentional torts or strict liability claims; thus, according to Appellants, the lack of proof of negligence is not dispositive. Instead of any offer, acceptance, or consideration, Appellants point out that the statutory claim against them seeks monetary damages for an alleged failure to act, and, thus, sounds in tort.

Appellants go on to assert that the Commonwealth Court's attempt to distinguish *Antonis*—on the basis that the statute at issue in that decision contained a "neglect" requirement, and, thus, sounded in tort—is unpersuasive. Appellants first note that the statute at issue in that case required the recorder of deeds to index every recorded deed and mortgage "in its appropriate place and manner[,] . . . and in case he neglects to do so[,] he and his sureties shall be liable in damages to any person aggrieved by such neglect." *Antonis,* 821 A.2d at 668 (quoting Section 2 of the County Code, 16 P.S. § 9852). The plaintiff in *Antonis* filed a claim against the recorder of deeds for failing to perform the official duty of indexing a mortgage and note, which failure left the plaintiff unable to recover a debt owed on the note. The *Antonis* court explained that the note constituted property and that the improper indexing caused economic injury, but concluded none of the eight exceptions to immunity in Section 8542 of the Tort Claims Act applied and so found the recorder of deeds immune from liability. Appellants develop that the presence of the term "neglect" in the statute at issue in *Antonis,* and its absence in 20 Pa.C.S.A. § 3172, is a distinction without a difference, as the duty in both statutes is stated in mandatory terms (the indexing of mortgages and bond requirement), and, given that a recorder must index every mortgage, "neglect" is not synonymous with negligence, but must mean a failure to record. Thus, according to Appellants, the Commonwealth

Court's analysis of the applicability of the Tort Claims Act in *Antonis* is not founded on the presence (or absence) of negligence.

Finally, Appellants stress that, even if they prevail and the Tort Claims Act is deemed in this appeal to apply to claims under Section 3172, a register of wills would still be liable for intentional acts under 42 Pa.C.S.A. § 8550 (action against local agency or employee thereof for acts of crime, actual fraud, actual malice, or willful misconduct). According to Appellants, this residual liability supports their contention that the overarching purpose of the Tort Claims Act is to immunize against tort liability broadly.

Regarding the second issue on appeal, Appellants contend the Register is also entitled to official immunity under Section 8546 as a public officer. They note that official immunity protects a public officer from liability, even where governmental immunity does not. 42 Pa.C.S.A. § 8546. Appellants submit that they have found no Pennsylvania authority to support the Commonwealth Court's conclusion that the issue of whether the Register's belief that his actions were reasonable was a question of fact for the jury. Rather, they offer federal case law suggesting the issue is for the court, and one which should be resolved at the earliest stage of litigation, citing *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

In response to Appellant's arguments, Appellee first acknowledges the limited exceptions to the governmental immunity granted to local agencies contained in the Tort Claims Act, but embraces the *Meyer's* Court's rejection of a mechanical approach to immunity and reiterates its holding that governmental immunity does not extend to all statutory causes of action, but only to those sounding in tort. *Meyer*, 2 A.3d at 503 & n. 6. Appellee repeatedly asserts that, consistent with *Meyer*, the Commonwealth Court herein did not in mechanical fashion assume immunity under the Tort Claims Act simply because her claim did not fall within one of the eight statutory exceptions to immunity. Rather, it concluded immunity did not apply as a matter of law, and, thus, summary judgment

was inappropriate. Furthermore, offering a public policy argument, Appellee submits that the Commonwealth Court's rejection of immunity merely results in registers being appropriately required "to secure a personal representative bond from a fiduciary when required [under the Code]" and prevents "a de facto repeal of Section 3172," noting that, without a remedy for the failure of a register to comply with the bonding requirements of that section, there would be "no protection for heirs or beneficiaries from the unscrupulous acts of a dishonest personal representative." Brief of Appellee at 16.

Appellee goes on to argue that the Commonwealth Court properly distinguished its prior decision in *Antonis* from this matter, as, in that decision, where immunity was found, the "neglect" of the public officer was at issue, while here, Section 3172 does not require neglect, but only the failure to secure a bond when required. Thus, Appellee claims that the circumstances in *Antonis* involve a broader scope of potential public liability, in that the recorder of deeds in that decision was held to be immune for a ministerial error made by a clerk, but, in the case *sub judice*, the Register failed to perform a legal obligation. Additionally, Appellee highlights our decision in *Commonwealth to Use of Colonial Trust Co. of Reading v. Gregory*, 261 Pa. 106, 104 A. 562 (1918), which, even during times when the common law doctrines of governmental and official immunity were in existence, nevertheless found the register of wills liable for violating a duty under the predecessor to the PEF Code, by similarly failing to secure a personal representative bond from a fiduciary.

As to the second issue regarding the applicability of official immunity under 42 Pa.C.S.A. § 8546, Appellee maintains this is a fact question as the Commonwealth Court found. Appellee reasons that an issue of fact was raised regarding whether the Register's failure to require a bond from Keefer was an exercise in judgment, and, thus, discretionary, or whether it was a breach of an absolute duty. Appellee offers that the Register contends that he acted reasonably and in good faith when he granted letters of administration to Keefer in re-

sponse to the orphan's court's order, but notes that the PEF Code creates an absolute duty on the part of the Register to secure a bond in these circumstances. According to Appellee, this conflict demonstrates that material facts are in dispute, and, thus, are for a fact-finder to resolve. Therefore, Appellee submits that the Commonwealth Court properly vacated the trial court's order and remanded the matter to the trial court for further proceedings.

The first issue on which we granted allocatur involves the question of immunity under the Tort Claims Act. Initially, however, we must clarify the focus of the issue. The parties and lower tribunals have directed their argument to Section 8541 of the Tort Claims Act, which speaks to "governmental immunity," and the liability of a "local agency." 42 Pa.C.S.A. § 8541. "Local agency" is defined as "[a] government unit other than the Commonwealth government." 42 Pa.C.S.A. § 8501. Thus, by its terms, Section 8541 does not directly apply to individuals. Section 8545, however, concerning "official liability," speaks to the liability of an employee of a local agency. 42 Pa.C.S.A. § 8545. Specifically, Section 8545 provides that "[a]n employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter." Id. Thus, in limiting the liability of the employee of a local agency to the liability of the local agency for which he or she is acting, the Tort Claims Act links concepts of official liability to concepts of governmental immunity.

Here, Appellee's claims are against the Register, in his official capacity. The Register is a public official, not a local agency. As noted by the Commonwealth Court, and not contested by the parties, the Register, as an employee of the Office of the Register of Wills, is a county employee. *See Dorsey*, 22 A.3d at 281 n. 8; 335 Pa.Code § 1.2–201(h) ("The elected officers of the County shall be: . . . (h) Register of Wills."). Further, and likewise uncontested by the parties, it has been determined that a county is a local agency under the

Tort Claims Act. *See* 42 Pa.C.S.A. § 8501; *Simko v. County of Allegheny*, 869 A.2d 571, 573 (Pa.Cmwlth.2005). Thus, for purposes of the first question on which we granted appeal, we find that the Register is an employee of a local agency under the Tort Claims Act. Further, as an employee of a local agency, the Register's official liability is only to the same extent as his or her employing local agency. 42 Pa.C.S.A. § 8545. Accordingly, we first turn to the background of governmental immunity, to determine the extent of liability of the Register, as an employee of the county.

With roots in the English common law,[5] the concept of a limitation on the availability of remedies against the alleged wrongdoing by state officials, i.e., the doctrine of sovereign immunity, was suggested in our Commonwealth as early as 1788. *Respublica v. Sparhawk*, 1 Dall. 357, 1 L.Ed. 174 (1788). Sovereign immunity, and the companion doctrine of governmental immunity—governing political subdivisions of the state government, i.e., local governments—was made manifest 60 years later in *O'Conner v. Pittsburgh*, 18 Pa. 187 (Pa.1851), in which both doctrines (not treated as distinct at the time) were conclusively adopted in our Commonwealth. The underlying purpose behind both sovereign and governmental immunity was to protect the fiscal security of the government by shielding the Commonwealth and its agents, as well as local agencies, from tort liability. Almost 125 years later, however, our Court abolished the common law doctrines in *Ayala v. Philadelphia Bd. of Pub. Educ.*, 453 Pa. 584, 305 A.2d 877, 878 (1973) (abrogating doctrine of governmental immunity), and *Mayle v. Pa. Dept. of Highways*, 479 Pa. 384, 388 A.2d 709 (1978) (rejecting doctrine of sovereign immunity), concluding, in sum, that the doctrines were unfair and unsuited to the times. The General Assembly was swift to react, restoring sovereign immunity via the Sovereign Immunity Act, 42 Pa.C.S.A. § 8521, and governmental immunity through the

5. *See generally The Origins of Accountability: Everything I Know About the Sovereign's Immunity, I Learned from King Henry III*, 49 St. Louis L.J. 393 (Winter 2005) (exploring, *inter alia*, the ancient, and often misunderstood, foundations of sovereign immunity, as expressed by the maxim, "the King can do no wrong").

enactment of the Tort Claims Act. 42 Pa.C.S.A. § 8541. Our Constitution neither prohibits nor grants immunity to the Commonwealth, but vests authority in the General Assembly to determine the matters in which the government shall be immune. Pa. Const. art. I, § 11 ("Suits may be brought against the Commonwealth in such manner, ... and in such cases as the Legislature may by law direct"). Accordingly, our Court has recognized that the legislature is the exclusive body with authority to confer immunity upon political subdivisions. *City of Phila. v. Gray*, 534 Pa. 467, 633 A.2d 1090, 1093 (1993) (determining General Assembly has exclusive authority to confer governmental immunity); *Carroll v. Cnty. of York*, 496 Pa. 363, 437 A.2d 394, 396 (1981) (finding municipalities to be agents of state whose powers are determined by legislature). Thus, the breadth of immunity enjoyed by local agencies is ultimately for legislative, rather than judicial, determination.

■ As questions of governmental immunity are legislative in nature, we begin by considering the dictates found in the Statutory Construction Act ("SCA"). 1 Pa.C.S.A. §§ 1501 *et seq.* The objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S.A. § 1921(a). The best indication of the legislature's intent is the plain language of the statute. When the words of a statute are clear and unambiguous, we may not go beyond the plain meaning of the language of the statute "under the pretext of pursuing its spirit." *Id.* § 1921(b). Therefore, only when the words of a statute are ambiguous, should a reviewing court seek to ascertain the intent of the General Assembly through considerations of the various factors found in Section 1921(c). *Id.* § 1921(c); *see generally Bayada Nurses Inc. v. Com. Dept. Labor and Indus.*, 607 Pa. 527, 8 A.3d 866, 880–81 (2010). Additionally, we are mindful that, in interpreting the Tort Claims Act, exceptions to the absolute rule of immunity expressed in the statute "must be narrowly interpreted given the expressed legislative intent to insulate political subdivisions from tort

liability." *Mascaro v. Youth Study Ctr.*, 514 Pa. 351, 523 A.2d 1118, 1123 (1987).

Section 8541 of the Tort Claims Act, by its terms, speaks broadly, consistent with its historical underpinnings: "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for *any* damages on account of *any* injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S.A. § 8541 (emphasis added). Section 8542, however, carves out a limited number of specific statutory exceptions to this all-encompassing immunity provision. The eight exceptions set forth in Section 8542(b) permit liability in the following areas: (1) vehicle liability; (2) care, custody, or control of personal property in possession of the local agency; (3) care, custody, or control of real property in possession of the local agency; (4) dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care custody, or control of the local agency; (5) utility service facilities; (6) dangerous conditions of streets owned by the local agency; (7) dangerous conditions of sidewalks within the right-of-way of streets owned by the local agency; and (8) care, custody, or control of animals in the possession or control of a local agency, including police dogs and horses. 42 Pa.C.S.A. § 8542(b).

Two prerequisites, however, must be satisfied for an exception to apply. First, the damages must be otherwise recoverable under common law or a statute creating a cause of action, but for the defense of Section 8541 or Section 8546. 42 Pa.C.S.A. § 8542(a)(1). Second, the injury must have been "caused by the negligent acts [not acts or conduct constituting a crime, actual fraud, actual malice or willful misconduct] of the local agency or an employee thereof acting within the scope of his office or duties with respect to" one of the eight exception listed in Section 8542(b). 42 Pa.C.S.A. § 8542(a)(2).

In interpreting whether immunity under the Tort Claims Act applies to the claim set forth in this appeal which alleges a statutory violation, the parties devote significant argumentation to our recent decision in *Meyer, supra*, in which our Court

grappled with the issue of whether governmental immunity extends to all statutory causes of action, regardless of whether they arise in tort or contract. At its core, our Court in *Meyer* eschewed a rote approach to determining immunity. While, generally, the appropriate analysis to determine whether the protections of the Tort Claims Act may cloak an employee of a local government entity with immunity first looks to whether the cause of action sounds in tort, or some other cause of action, such as in contract, we do not find this tort/contract construct to be necessarily appropriate in all questions of immunity.

Specifically, employing only the cannons of statutory construction, we find that Section 3172 of the PEF Code creates a targeted form of accountability resting outside of the scope of governmental and official immunity. Initially, we note that Section 3172, imposing liability on any register granting letters without having taken a bond as required by law, and Section 8545 of the Tort Claims Act, limiting liability of an employee of a local agency to that of the agency, and immunizing agencies from damages on account of injury to person or property, are in direct conflict. As a general proposition, Section 1933 of the SCA provides that, in the event of a conflict, a specific provision (Section 3172 imposing liability on the register specifically) governs over the more general provision (Section 8545 providing immunity from damages generally). 1 Pa.C.S.A. § 1933. Thus, the proposition of liability on the register would seemingly trump the immunity of the Tort Claims Act under principles of statutory construction. Yet, an additional complication concerning the application of relevant cannons of statutory construction is at play. Section 1936 of the SCA provides that later enacted statutes should generally control over earlier, conflicting statutes. 1 Pa.C.S.A. § 1936. As the Tort Claims Act was enacted later than Section 3172 and the PEF Code, Section 1933 would suggest the general immunity of the later statute was intended by the legislature to control over the specific, earlier enacted provision imposing liability on the register. *See generally* Karl N. Llewellyn, The Common Law Tradition: Deciding Appeals 521–35 (1960) (pos-

iting that conflicting precepts of statutory construction "thrust" and "parry" at one another). However, even this later-in-time rule is subject to a qualification. Section 1933 requires that specific statutes be given effect over later, conflicting general statutes unless "it shall be the manifest intention of the General Assembly that such general provision shall prevail." 1 Pa.C.S.A. § 1933. In that regard, it does not appear, and the parties have not proffered, that the manifest intention of the General Assembly was that the Tort Claims Act should take precedence over the specific scheme set forth in Section 3172 of the PEF Code involving the protection of estate assets. Rather, we find that the legislature's manifest purpose was to maintain such essential protection.

We further note that the enactment in 1980 of the Tort Claims Act was in response to our Court's abolition of the common law doctrines of governmental and sovereign immunity in the mid–1970s. *See Ayala; Mayle.* Indeed, common law immunity was in full force and effect in 1970 when the liability provision for registers was enacted. It seems highly unlikely that, at the same time the General Assembly was codifying the preexisting immunity scheme which our Court abolished, the legislature also aimed to silently undermine a particularized form of liability protection of estate assets which was previously on the books and coexisted with common law immunity.[6]

Thus, applying the relevant cannons of statutory construction, we find that the General Assembly, through Section 3172, intended to maintain a protective scheme for preservation of estate assets through the PEF Code, and that this scheme persists outside of the scope of governmental and official immunity under the Tort Claims Act. Accordingly, we find the

6. Although concepts of governmental immunity were not raised or discussed in our decision in *Commonwealth to Use of Colonial Trust Co. of Reading v. Gregory*, 261 Pa. 106, 104 A. 562 (1918), which found the register of wills liable for violating a duty under the predecessor to the PEF Code by failing to secure a personal representative bond from a fiduciary, that decision is consistent with, and underscores, our opinion today.

Register is not immune under the Tort Claims Act from liability for an alleged violation of Section 3172.

██ Having determined the Tort Claims Act does not immunize the Register from Appellee's cause of action alleging a breach of Section 3172 of the PEF Code, we turn to the second issue on which we granted allocatur: whether, in assessing the applicability of official immunity under 42 Pa. C.S.A. § 8546, the issue of whether the official's conduct giving rise to the claim was authorized or required by law, or whether the official in good faith reasonably believed the conduct was authorized or required by law, is a question of fact for the fact-finder, or a legal issue to be decided by the trial court.

██ Official immunity, as noted by the Commonwealth Court, has its genesis in the English common law, and was adopted in the United States to preserve the integrity of public official decision making. The underlying purpose is to allow those in governmental policy making positions to have the ability to act without the fear of litigation and unlimited damages. *DuBree v. Commonwealth*, 481 Pa. 540, 393 A.2d 293, 295 (1978). Section 8546 is the legislative embodiment of official immunity for local agency employees. 42 Pa.C.S.A. § 8546(2). Specifically, this section grants official immunity for such employees when, *inter alia*, "the conduct of the employee which gave rise to the claim was authorized or required by law, or that he in good faith reasonably believed the conduct was authorized or required by law." *Id.*[7]

Here, the conduct "authorized or required by law" was the issuance of letters to Keefer without securing a bond, in contravention of the requirements of Section 3172, but pursuant to, as the Register asserts, the orphan's court's order. As noted above, Appellee contends that Section 3172 imposes absolute liability on a register who not does secure a bond,

7. As there is no allegation of malicious or reckless acts by the Register, there is no impediment to him asserting official immunity. See 42 Pa.C.S.A. § 8550 (official immunity not applicable when there has been a judicial determination of, *inter alia,* actual malice or willful misconduct).

and, thus, the question of official immunity is a legal question to be decided by the court. The Register asserts that there exists material questions of fact regarding whether his failure to require a bond from Keefer was an exercise of judgment, and, therefore, discretionary, or whether it was the breach of an absolute duty. According to the Register, this issue of material fact is in dispute and, as such, is a question for the jury.

The Commonwealth Court, focusing on the orphan's court's directive to issue letters to Keefer, found the question of official immunity with respect to whether the Register's actions were authorized by the court's order involved determining whether the Register's conduct in not requiring a bond from Keefer was authorized or required by law; or, even if not lawful, whether he in good faith reasonably believed that his conduct was authorized or required by law. These determinations, according to the court, involved the exercise of judgment by the Register in the context of the Register's initial refusal to grant the letters to Keefer, the orphan's court's immediate directive to issue the letters to Keefer, and the court's subsequent order to issue letters to Dorsey upon presentation of an appropriate petition. In these circumstances, and in the context of a motion for summary judgment, the Commonwealth Court opined that there existed a genuine issue of material fact which was for resolution by the fact-finder. Therefore, the court found summary judgment to be inappropriate. Moreover, the court determined that the amount of the bond required by the PEF Code was a factual issue for determination at trial. Thus, the Commonwealth Court found the Register was permitted to raise the defense of official immunity, but that this was an issue for the fact-finder, and remanded the matter for further proceedings.

The issue of official immunity—i.e., whether the official's conduct which gave rise to the claim was authorized or required by law, or that the official in good faith reasonably believed the conduct was authorized or required by law—at least in these circumstances, involves a mixed question of law and fact. The determination turns on the statutory require-

ments of Section 3172 and Section 8546, an examination of the orphan's court's orders, as well as the circumstances surrounding the issuance of those orders.

Here, the court's order requiring the issuance of letters of administration did not expressly mention the Register's statutory obligation to require a bond:

AND NOW, this 1st day of February, 2006, upon consideration of the foregoing Petition, same having been presented in open Court, it is hereby *ordered and directed* that Donald D. Redman, Register of Wills of Fayette County, Pennsylvania, *is hereby authorized and directed to issue Letters of Administration* to Cheryl L. Keefer pursuant to 20 Pa.C.S.A. § 3155(a)(5) without the necessity of requiring a death certificate; it is further ordered and directed that the Mon Valley Hospital shall release the remains of the decedent, Andre Leonti, to Cheryl L. Keefer for the appropriate funeral and burial services.

Keefer Order (R.R. at 158) (emphasis added). This order directing the issuance of letters can be contrasted with the Dorsey Order removing Keefer as administratrix and appointing Dorsey, which made the issuance of letters contingent upon the presentation of an appropriate petition:

AND NOW, this 28th day of February, 2007, upon consideration of the foregoing Petition, it is hereby ordered, adjudged and decreed that:

1) Cheryl L. Keefer is hereby removed as Administratrix.

2) The Register of Wills is directed to grant Letters of Administration to Elvira A. Dorsey *upon presentation of an appropriate Petition for Grant of Letters.*

Dorsey Order (R.R. at 168) (emphasis added).

Thus, the orphan's court in the Dorsey Order did not "authorize and direct" the Register to issue letters to Dorsey, but only to do so upon the presentment of "an appropriate Petition." By contrast, in the Keefer Order, the Register was "ordered and directed ... to issue Letters of Administration" through an order that did not address the bonding requirement. In addition, the circumstances surrounding the issu-

ance of the orders must also be considered, including that the orphan's court's Keefer Order, directing the issuance of letters, which would facilitate the funeral and burial of the Decedent, came on the heels of the Register refusing to issue letters to Keefer only the day before, at least suggesting an urgency to issuing the letters.

First, we note that the standard in determining official immunity is objective—whether the public official's conduct was authorized or required by law, or that he in good faith reasonably believed the conduct was authorized or required by law. Further, a question of official immunity is a preliminary matter requiring determination before trial. As noted by the Register, while this issue is one of first impression, by analogy to good faith qualified immunity in federal claims, "[t]he entitlement is an immunity from suit rather than a mere defense to liability." Appellant's Brief at 21 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). Indeed, the United States Supreme Court suggested that "immunity ordinarily should be decided by the court long before trial." *Hunter*, 502 U.S. at 228, 112 S.Ct. 534. Viewed as an immunity from suit, we believe it prudent that a trial court undertake this analysis prior to trial, possibly obviating the need for trial. Additionally, we find that a court is more suited to analyze the applicable law, interpret relevant court orders, and to discern the reasonable beliefs of a public official—a register of wills—in the performance of his official duties. Finally, we note that, to the extent necessary, a court may as a preliminary matter make necessary findings of fact (and ultimately conclusions of law) through a preliminary hearing on the issue. Accordingly, based upon these considerations, we hold that the issue of official immunity is a preliminary question for resolution by the court.

In the present case, arguably, based upon the orphan's court's Keefer Order, containing no mention of the Register's statutory obligation to require a bond, and the Register's ability to simply require an appropriate bond or seek clarification from the orphans court as to whether it was the court's intention to require him to disregard his statutory responsibil-

ity, we could resolve this issue. However, we deem it prudent that this matter be remanded to the orphan's court for reconsideration of the issue of official immunity, consistent with our decision today.

■ Finally, and related to our grant of allocatur on the issue of whether a court or jury determines questions of official immunity, even if the Register was not entitled to official immunity, we do not believe that Appellee is entitled to relief as a matter of law, as there is a material fact as to what damages accrued to Appellee as a result of the Register's failure to require a bond. 20 Pa.C.S.A. § 3172 ("If any register shall grant letters without having taken such bond as required by law, he and his surety shall be liable to pay all damages which shall accrue to any person by reason thereof."). The requirement of "such bond as required by law," might have been nominal in light of the circumstances of this case. To the extent this would impact damages owed to Appellee as a result of the Register's failure to require a bond, the matter should be resolved on a developed factual record with Appellants bearing the burden of proof. Indeed, the fact that the Register had refused to issue the letters in the first instance upon the attestation of a non-relative who was unable to present a death certification brings into question whether the Register either would have, or could reasonably have, required only nominal security, once he was directed by the orphan's court to issue the letters. Therefore, the Commonwealth Court properly vacated the trial court's order in this regard and remanded the matter to the orphan's court for further proceedings.

In sum, we hold that (1) the protective scheme for preservation of estate assets through Section 3172 of the PEF Code exists outside of the scope of governmental immunity under the Tort Claims Act, and, thus, the Register is not immune from liability for an alleged violation of Section 3172; (2) in assessing the applicability of the defense of official immunity pursuant to 42 Pa.C.S.A. § 8546(2), the issue of whether the official's conduct giving rise to the claim was authorized or required by law, or if the official in good faith reasonably

believed his conduct was required by the court's order, is a preliminary question for resolution by the court; and (3) the question regarding the appropriate bond as required by law should be resolved on a developed factual record.

Accordingly, we affirm the Commonwealth Court's order, remanding this matter to the orphan's court for further proceedings, consistent with the distinct reasoning set forth in our opinion today.

Jurisdiction relinquished.

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN, BAER and McCAFFERY join the opinion.